[Civ. No. 2968.   Third Appellate District.—October 13, 1925.]

## JOHN SEUFERT, Appellant, v. PETER COOK et al., Respondents.

**[1]** WATERS AND WATER RIGHTS—FLOOD WATERS—RIGHT TO LEVEE.—The right to levee against flood waters has become firmly established in this state.

**[2]** RECLAMATION DISTRICTS—OVERFLOW WATERS OF SACRAMENTO RIVER AND ITS TRIBUTARIES—RIGHT OF RECLAMATION DISTRICT NO. 1500 TO ERECT LEVEES.—The trustees of Reclamation District No. 1500 have the right to erect the levees protecting the lands lying within Reclamation District No. 1500 from the overflow waters of the Sacramento River and its tributaries.

**[3]** ID.—UNFINISHED LEVEE—DAMAGE TO LAND—NEGLIGENCE OF OFFICERS—PLEADING—DEMURRER.—A complaint against the officers of a reclamation board and district for damages for alleged negligence in causing and permitting waters, which had previously accumulated far from the lands of plaintiff and his assignors without injury or damage thereto, to be turned into a by-pass (which was constructed by defendants in accordance with a plan for reclamation of lands and flood control) when a levee on one side of said by-pass was unfinished, and thereby to flow upon and damage said lands, is subject to a demurrer for ambiguity and uncertainty, in that it does not state whether said waters were surface waters or flood waters.

---

1.  See 26 Cal. Jur. 291.

[4] ID.—FLOOD WATERS — BUILDING OF LEVEE — FLOWING OF WATERS
UPON ·LANDS WITHOUT DISTRICT.—Reclamation District No. 1500
had a perfect right to build a levee along the northerly and
easterly boundary of the district to protect the lands lying within
the district from flood waters coming across the country, even
though these flood waters were by such action caused to flow upon
the lands lying without the district.

[5] ID.—NEGLIGENCE—PLEADING—LIABILITY OF TRUSTEES OF DISTRICT
AND MEMBERS OF RECLAMATION BOARD.—To further allege in such
complaint that the trustees of Reclamation District No. 1500 were
negligently doing what they had a lawful right to do, without
showing facts that they were performing a lawful act in a neg-
ligent manner, fails to state a cause of action, nor can the mem-
bers of the State Reclamation Board be held liable for having
approved a plan provided for by the legislature and authorizing
the trustees of Reclamation District No. 1500 to execute a plan
and build a levee to protect said reclamation district from the
flood waters of the Sacramento River and its tributaries without
showing that said defendants participated in and authorized these
acts to be performed in a negligent manner.

(1) 36 C. J., p. 999, n. 40; 40 Cyc., p. 640, n. 12.   (2) 36 C. J.,
p. 1007, n. 12; 40 Cyc., p. 639, n. 10.   (3) 36 C. J., p. 1030, n. 88;
31 Cyc., p. 72, n. 30, p. 282, n. 19.   (4) 20 C. J., p. 688, n. 9; 36
C. J., p. 1005, n. 58.   (5) 36 C. J., p. 1030, n. 88.

APPEAL from a judgment of the Superior Court of
Sutter County. George H. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Carlin and A. H. Hewitt for Appellant.

Devlin & Devlin, A. C. Huston, H. L. Huston and
Stephen W. Downey for Respondents.

PLUMMER, J.—By this action plaintiff seeks to recover
from the defendants damages in the sum of $171,850 al-
leged to have been caused to his lands and the lands of
thirty-two other persons, assignors of the plaintiff, by the
negligent acts of the defendants. The trial court sustained

4. Surface water theory of floods as affecting right of riparian
owners to embank against flood or overflow water from stream, note,
16 A. L. R. 636. See, also, 26 Cal. Jur. 292.

the demurrer of the defendants to the plaintiff's amended complaint and from the judgment thereafter entered upon the sustaining of such demurrer the plaintiff appeals.

The complaint sets forth thirty-three separate causes of action, but the gravamen of each cause is set forth in identical words, save and except as to the amount of damages alleged in the different causes of action. The questions presented for determination necessitate a consideration only of the allegations set forth in the following language:

"From time immemorial and up to and on or about the 12th day of February, 1919, in the winter or rainy season of every year large bodies of water accumulated along and near the Westerly portion of Sutter County far and westerly from the said lands of plaintiff in what was generally known as the Sutter Basin and the Sutter Tules whereby and through which said water ultimately flowed off into the Sacramento River without injuring, damaging or in any way affecting plaintiff's lands or any crop growing thereon; however, between the 10th day of August, 1913, and the 12th day of February, 1919, defendants and every of them acting jointly and in unison, began and proceeded to carry out a plan of reclamation and flood control wherein and whereby it was proposed to reclaim the lands in said Sutter Basin over and upon which said water had from time immemorial in the winter season of every year flowed as aforesaid by the construction and maintenance of a by-pass to the East of said Sutter Basin and to the West of plaintiff's said lands and through said by-pass to carry off the said waters which had theretofore flowed down through said Sutter Basin as aforesaid.

"The said plan for reclamation and flood control provided that said by-pass should be of sufficient width and also that there should be constructed and maintained on both the Easterly and Westerly sides thereof, a levee of sufficient height, dimensions, continuity and structure so as to permit all said waters to be by and through said by-pass carried on down the same in a general Southerly direction without flowing upon or flooding any of the lands of plaintiff or any lands similarly situated with respect to said by-pass.

"On or about the 12th day of February, 1919, and after the construction of said Westerly levee of said by-pass but before the construction and completion of said Easterly levee

of said by-pass in accordance with the plan therefor or at all, said defendants, acting jointly and in unison as aforesaid, willfully, negligently and wrongfully caused and permitted said waters to be turned away from said Sutter Basin or Sutter Tules and into said by-pass and because of the then unfinished, incomplete, defective and in some places, practical absence, of said East levee of said by-pass, the waters thus caused and permitted to flow into said by-pass flowed and poured over and through said unfinished, incomplete and defective East levee aforesaid and therefrom down, over and upon plaintiff's said lands, and said waters did then and there inundate and submerge plaintiff's said lands and did destroy valuable crops of grain and alfalfa, also valuable trees and vines belonging to plaintiff and then growing thereon to plaintiff's damage in the sum of $5300.00; and thereby, in addition to said damage done to said crops, trees and vines, said waters did injure and damage plaintiff's said lands in the further sum of $500.00."

For convenience we have quoted the language in which the first cause of action is alleged, which is identical with the allegations contained in the remaining thirty-two causes of action.

The demurrers to the complaint are both general and special and raise all the questions which we will consider herein.

The legal history of this case really begins with the act of the legislature approved December 24, 1911 (Stats. Ex. Sess. 1911, p. 117), adopting the report of the California Debris Commission theretofore transmitted to the Speaker of the House of Representatives of the United States by the Secretary of War. By that act of the legislature a reclamation board consisting of three members was created having power to approve plans of reclamation for the construction of levees, embankments, canals, etc., along the Sacramento River, for the reclamation of overflow lands, and the control of flood waters. In furtherance of the execution of the plans contemplated by the report above referred to the legislature of this state in 1913 (Stats. 1913, p. 130) created the defendant Reclamation District No. 1500. The history and purpose of this district are concisely set forth in *Reclamation District* v. *Riley,* 192 Cal. 147 [218 Pac. 762], from which we take the following:

"Reclamation District No. 1500 was created pursuant to the provisions of an act entitled 'An act creating a reclamation district to be called and known as "Reclamation District No. 1500'" (Stats. 1913, p. 130). This statute declares that 'It shall be the duty of said reclamation district No. 1500 to construct a levee, forming the south side of Tisdale by-pass, and a portion of the westerly side of the Sutter Basin by-pass. . . .' These by-passes were a part of a comprehensive plan known as the report of the California Debris Commission, adopted by legislative enactment for the flood control of the Sacramento River in its entirety and the reclamation of lands which had been formerly inundated by the flood waters of the river. (Stats. 1911, Ex. Sess., p. 117.) As a governmental agency to carry out the plan of the flood control and reclamation there was created the Sacramento-San Joaquin drainage district, which embodied within its confines Reclamation District No. 1500 and other reclamation districts not necessary to be enumerated here. (Stats. 1913, p. 252.) The management and control of the drainage district was vested in the state reclamation board. (Stats. 1913, p. 252, sec. 5, p. 266.) The statutory plan as adopted contemplated that the flood waters of the Sacramento River would be led through certain weirs and by-passes into one main by-pass, which would ultimately through the medium of other and intermediate by-passes, empty into San Francisco Bay. In order to facilitate the expedient carrying out of the plan it was provided that the entire work should be divided into separate projects by the state reclamation board, which should then be constructed as separate units. (Stats. 1913, p. 252, sec. 13, p. 269.) Each project was to be designated by a number and a name, and the project of which the levees in controversy are a part is known as the 'Sutter-Butte By-pass Project No. 6.'"

The act of 1913 also provided that the defendant District, No. 1500, should erect certain described portions of what is therein designated as the east levee of the Sutter by-pass, it being contemplated that when the work was all finished, the flood waters of the Sacramento River and its tributaries, which, as alleged in the complaint, had from time immemorial spread out over the Sutter basin comprising most of the lands included within District No. 1500, would be conveyed on down to what is known as the Yolo by-pass, and

thence to the Suisun Bay, within certain defined limits. It appears that the lands of the plaintiff and his assignors lie above the elevation of what is known as contour 40, and that the area comprised within the limits of Reclamation District No. 1500 is of a sufficiently lower elevation to accommodate the flow of the flood waters finding their way over the same without damage or injury to the lands of the plaintiff and his assignors.

The legislature of this state, by an act approved May 26, 1913, also created what is known as the Sacramento-San Joaquin drainage district, placing the control thereof in the Reclamation Board of the state of California. The lands belonging to the plaintiff, and also all the lands lying within the boundaries of Reclamation District No. 1500 are included within the exterior boundaries as set forth in the act creating the Sacramento-San Joaquin drainage district. This latter act empowers the state Reclamation Board to approve all plans of reclamation before the same are executed and also authorizes said board to prevent the erection of any levees, embankments, etc., until the plan for the erection of the same should have been approved by the Reclamation Board.

Pursuant to these acts of the legislature the defendant District No. 1500 has proceeded to erect a levee along the Tisdale by-pass, and also along the easterly boundary line of Reclamation District No. 1500, which constitutes the westerly boundary of the Sutter by-pass. The easterly levee of the by-pass authorized to be constructed by the act creating defendant District No. 1500 had not, at the time of the injury complained of, been constructed, or, at least, not sufficiently so to prevent the flood waters of the Sacramento River and its tributaries from spreading out over adjacent lands.

According to the allegations of the complaint, in February, 1919, the waters which theretofore had found their way over the Sutter basin and across the lands included within the limits of Reclamation District No. 1500, were deflected and thrown back and over and upon the lands belonging to the plaintiff and his assignors, by reason of the erection of the levee referred to, as being constructed along the easterly boundary of District No. 1500, that levee having been constructed prior to the construction of the levee along the

easterly boundary of the Sutter by-pass contemplated by the act referred to, and being a part of the work necessary for the conveying of the flood waters of the Sacramento River and its tributaries within definite boundaries.

As set forth in the various cases decided by the supreme court of this state having to do with litigation arising out of the adoption and execution of plans for the control of the flood waters of the Sacramento River and its tributaries, three objects are sought to be obtained: 1. The improvement of navigation of the Sacramento River; 2. The reclamation of the lands lying along said rivers; and 3. The confining of the flood waters within definite boundaries by the construction of weirs, levees and such other works as might, from time to time, be found expedient or necessary. The history of the reclamation work to which we are referring as set forth in the various cases having to do therewith, also shows that the execution of the work has been hampered and delayed by the lack of funds and also the obstacles thrown in the way of the execution and use of the funds provided, or attempted to be provided, for defraying the expenses of the contemplated improvements. Just how long the completion of the plans approved by the legislature and provided by the act of the legislature to be put into execution have been delayed, does not appear, but the several cases relating thereto indicate that the period comprises a number of years. It would seem that these obstacles and the litigation concerning the district caused a delay of a sufficient period of time which otherwise would have sufficed for the building of the easterly levee of the Sutter by-pass, as contemplated by the act of the legislature of 1913. We speak of these because the records show the causes of the delay, and therefore that such delay cannot be held as chargeable to the officers of the district having to do with the execution of the contemplated plans.

This brings us down to a consideration of the allegations contained in the plaintiff's complaint. Among other things set forth therein, we find the following:

"On or about the 12th day of February, 1919, and after the construction of said Westerly levee of said by-pass but before the construction and completion of said Easterly levee of said by-pass in accordance with the plan therefor or at all, said defendants, acting jointly and in unison as

aforesaid, willfully, negligently and wrongfully caused and permitted said waters to be turned away from said Sutter Basin or Sutter Tules and into said by-pass and because of the then unfinished, incomplete, defective and in some places, practical absence, of said East levee of said by-pass, flowed and poured over and through said unfinished, incomplete and defective East levee aforesaid and therefrom down, over and upon plaintiff's said lands" etc.

It is sought by the allegations of the complaint of which the foregoing is a portion to charge the officers of said Reclamation Board and of Reclamation District No. 1500 with the damages caused by the overflowing of plaintiff's lands on account of the erection of the levee along the westerly boundary of the proposed by-pass before the completion of the levee along the easterly boundary thereof. The gist of the allegation is really that the flood waters of the Sacramento River and its tributaries should have been allowed to follow its immemorial trend over the lands comprised within Reclamation District No. 1500 until the levee along the easterly line of the proposed by-pass had been fully completed, or, to put it in other words, that protection should not have been afforded to the lands of the district before protection was also afforded to lands lying without the district. In support of this contention our attention is called to page 19, second edition, of Cooley on Torts, setting forth three definitions of negligence or acts for which one may become liable: "1. By actually doing to the prejudice of another something he has no legal right to do; 2. By doing something he may rightfully do, but wrongfully or negligently doing it by such means, or at such time, or in such manner, that another is injured; 3. By neglecting to do something which he ought to do, whereby another suffers injury." This definition was adopted and approved by the supreme court in *Perkins* v. *Blauth*, 163 Cal. 782 [127 Pac. 50]. In that case the trustees of Reclamation District No. 785 were held liable for having negligently cut down a certain levee for the purpose of affording passageway for a dredger into said district, that necessary precautions were not taken and certain lands belonging to the plaintiff were inundated and crops destroyed. The allegations of the complaint in that case were to the effect that the defendants cut a canal

through the natural banks of the Sacramento River and failed to take proper precautions to prevent the waters therefrom from flooding the plaintiff's lands. A number of cases are cited in the opinion having to do with the negligence of officers in the execution of work which they may legally perform, and in the doing of which they will not be liable if properly performed, but for which they will be liable if negligently performed. With that case and the numerous other cases cited by counsel supporting the same rules, we take no exception, but from the dissimilarity of the facts involved we think inapplicable to the questions tendered for determination in this case. The cases also touching upon these questions draw a clear distinction between what are called surface waters, i. e., rain-water moving across the country, and not coming from any definite source, flood waters or waters spreading out from overflowing streams having definite channels, and the changing of the waters ordinarily flowing within the banks of well-defined channels. Thus, in *Proper* v. *Sutter Drainage Dist.*, 53 Cal. App. 576 [200 Pac. 664], the syllabus reads: "The trustees of a drainage district are personally liable for the failure to use ordinary care to prevent the flooding of private property by the canals of the district." This case is cited to us as an authority establishing the sufficiency of the plaintiff's complaint. An examination of the facts set forth in the Proper case shows a striking dissimilarity from those set forth in the complaint under consideration. The acts charged in the Proper case are alleged as follows:

"Said defendants and all of them, in their management, control and operation of said main and lateral drainage canals, collected therein large bodies of water for the purpose of draining the territory traversed by said main canal . . . and said defendants in their said conduct and management of said canals did collect and convey down through said main canal where the same crosses the said lands of plaintiff and into said lateral canal, a large volume of water far in excess of the carrying capacity of said canals, and did overflow the banks of both thereof and did thereby, by the conveyance of such water down such canals, overflow the banks of said canals and did precipitate water upon and flood the said lands of plaintiff," etc.

The facts set forth in the opinion also show that the waters collected by the defendants were largely composed of surface waters collected by the canal of the defendant as aforesaid. Under these circumstances the trustees of the district were held liable. The Proper case follows the rule laid down in the case of *Sanguinetti* v. *Pock,* 136 Cal. 466 [89 Am. St. Rep. 169, 69 Pac. 98], where the distinction is drawn between the right to protect against surface waters and flood waters. In the case of *Pacific Seaside Home* v. *Newbert P. Dist.,* 190 Cal. 544 [213 Pac. 967], relied upon by the appellant, the facts show that the defendant attempted to construct a channel for the Santa Ana River, and so defectively and negligently constructed the same that the channel was insufficient to carry the waters of said stream, etc. There is nothing in that case touching upon the question of the right of anyone to protect his lands from overflow by flood waters. The Santa Ana River, it would appear, had its definite channels and the attempt was made to provide a new one, which was alleged to be improperly constructed, etc. This case and others cited by appellant are all unquestionably good law when applied to the facts under consideration, and as controlled by what has become the leading case in this state on the subject of the police powers of the state acting through its agencies to control the flood waters thereof. We refer to *Gray* v. *Reclamation District No. 1500,* 174 Cal. 622 [163 Pac. 1024].

[1] Beginning with the case of *Green* v. *Swift,* 47 Cal. 536, followed up by *Lamb* v. *Reclamation Dist. 108,* 73 Cal. 125 [2 Am. St. Rep. 775, 14 Pac. 625], and *Sanguinetti* v. *Pock, supra,* the right to levee against flood waters has become firmly established in this state.

The legal right to build levees to ward off the common enemy, known as flood waters, was fully established by the cases decided prior to the rendition of the opinion of the supreme court in the case of *Gray* v. *Reclamation Dist. 1500, supra,* but they are all set forth in this latter case, which has become the leading treatise upon the subject of surface and flood waters in the state of California, and what may be legally done in relation to the control thereof, the protection of land subject to overflow by flood waters by the building of levees, and when liability does, or does not,

ensue from the erection of such works. We might multiply words, but upon the subject of the flood waters escaping from the Sacramento River and its tributaries, we think that nothing of substance can be added to, or taken away, from what is said in the opinion of the supreme court, when deciding the Gray case. [2] We therefore simply refer to that case as unquestionable authority for the right of trustees of Reclamation District No. 1500 to erect the levees protecting the lands lying within Reclamation District No. 1500 from the overflow waters of the Sacramento River and its tributaries, and also the police powers of the state to provide for the erection of all the levees contemplated by the act of the legislature creating Reclamation District No. 1500.

With the foregoing matters kept in view, we will begin consideration of the alleged cause of action set forth by the plaintiff. [3] There is first a want of any statement as to the character of the waters that from time immemorial accumulated along and near the westerly boundary of Sutter County. Whether these waters were surface waters or flood waters is not stated. Against this lack of definite statement the defendants interposed a demurrer for ambiguity and uncertainty, which demurrer, we think, is well taken. The complaint then sets forth that the defendants "between the 10th day of August, 1913, and the 12th day of February, 1919, . . . began and proceeded to carry out a plan of reclamation and flood control wherein and whereby it was proposed to reclaim the lands in said Sutter basin over and upon which said water had from time immemorial in the winter season of every year flowed as aforesaid." If the waters so flowing over the Sutter basin were flood waters, what the plaintiff has alleged that the defendants proposed and were proposing to do, is exactly what the legislature authorized them to do, and which the law declares that they may do. [4] District No. 1500, as shown by the authorities which we have cited, had a perfect right to build a levee along the northerly and easterly boundary of the district to protect the lands lying within the district from flood waters coming across the country, even though these flood waters were by such action caused to flow upon the lands lying without the district. [5] To further allege that the trustees of the district were negligently doing what they had a lawful right to do,

without showing facts that they were performing a lawful act in a negligent manner, likewise fails to state a cause of action, nor can the members of the state Reclamation Board be held liable for having approved a plan provided for by the legislature and authorizing the trustees of Reclamation District No. 1500 to execute a plan and build a levee to protect said reclamation district from the flood waters of the Sacramento River and its tributaries without showing that said defendants participated in and authorized these acts to be performed in a negligent manner. That the erection of the levees on both sides of the contemplated by-pass is a work much to be desired and which will prove highly beneficial to all parties and land owners in the Sutter basin, and will afford protection to the lands of the plaintiff and his assignors from the flood waters of the Sacramento River and its tributaries, has no bearing whatever upon the right of Reclamation District No. 1500 to protect itself from the same flood waters. Whatever may be the law in other states, the right to protect one's property against the common enemy is firmly established in this state. Defendants have urged a number of other special grounds of demurrer, but, as what we have said is decisive of the case, we think it unnecessary to set them forth in this opinion.

We think the plaintiff's complaint does not state a cause of action, and the judgment of the trial court is therefore affirmed.

Hart, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on December 10, 1925.