POOLE, Respondent, v. SUN UNDERWRITERS INSURANCE COMPANY OF NEW YORK, A Corporation, Appellant.

(274 N. W. 658)

(File No. 8030. Opinion filed September 1, 1937)

*L. E. Waggoner* and *R. C. Riter,* both of Sioux Falls, for Appellant.

*B. H. Schaphorst,* of Brookings, for Respondent.

WARREN, J. Plaintiff brought suit against the defendant to recover damages to his automobile in the sum of $500 upon an insurance policy issued by the defendant company. The policy con-

tains certain coverages. Among other things, damages occasioned by tornado, cyclone, windstorm, hail, earthquake, explosion, and *water damage*. (Italics ours.) There are also certain terms in the policy couched in specific language, to the effect, "the car is insured against accidental and external discharge of water excluding damage caused by rain, sleet, snow, flood."

It appears that on the 5th day of July, 1934, there occurred at Brookings, S. D., and nearby vicinity, a severe rainstorm, and that about 2½ inches of rain fell in a little less than two hours. The water from the rain gathered on the streets of Brookings to the approximate depth of 2 feet. These waters broke the basement windows and ran into the basement of the garage where the plaintiff's car was kept and caused damage to the car, the amount of which is not in controversy. The defendant contends that under the provisions of subdivision K, excluding damages caused by rain, sleet, snow, or flood, that the particular damage suffered in this case comes within the excluding clause and is not covered by the policy, and that the loss sustained was not a result of surface waters, but was the direct result of rain and flood.

The case was tried to the court. At the conclusion of the trial the court found for the plaintiff. Findings and conclusions were made and thereafter a judgment entered. A motion for new trial was made which was overruled. The defendant has appealed from the judgment and order overruling the motion for new trial.

Appellant has narrowed the issues to be decided by this court by stating that there is no question as to the extent of damages, and by suggesting in its brief that the only question to be decided is whether the cause of the damage is one covered by this particular policy of insurance. We are therefore called upon to interpret the terms of the policy and determine what damages to the car were covered by the policy issued by the appellant to the respondent. Certain excerpts from the policy may therefore be helpful in following our views in the consideration and construing of the terms of the policy issued by the appellant. They are as follows.

"* * * 3. Tornado, Cyclone, Windstorm, Hail, Earthquake, Explosion and Water Damage, as defined in Paragraph K, page 2. * * *"

(Paragraph K.)

"Tornado, Cyclone, Windstorm, Hail, Earthquake, Explosion and Water Damage:

"Tornado, Cyclone, Windstorm, Hail, Earthquake, Explosion, Accidental and External Discharge or Leakage of water; excluding damage caused by rain, sleet, snow, flood, rupture of tires and explosion within the combusion chamber of an internal combustion engine. * * *"

The policy in question was printed on a single sheet of paper, but folded so as to make four complete pages. The blank spaces were filled in with a typewriter. It contained certain language to the effect that it insured only against such risks and perils as were named in the different schedules. The appellant, by way of affirmative defense in its answer, and by the argument in its brief, contends that the policy does not cover the hazard alleged in the respondent's complaint, and did expressly exempt from its provisions any damage arising by reason of rain, sleet, snow, or flood, and that the facts contended for in respondent's complaint came within the exclusion provisions of said policy and were not covered.

Respondent states that his automobile was damaged by water and that such damage was expressly provided for within the terms of the policy, as this particular peril was included among the other perils listed on the front page of the policy, as shown in the above quotations.

It is apparent that the word "rain" may be eliminated from consideration, as the undoubted intention in using the word "rain" was to exclude damage to the car by direct contact with falling rain, and for illustration we might say in case of windows left open admitting rain which might do damage to the upholstery and interior of the car.

▮ Was this gathering of water, flood water, or might it be called surface waters? If it was flood water, then no recovery could be had on account of the exclusion stated in the policy. From an examination of a number of authorities, it would seem that the water which diffused and squandered itself over the surface in the territory of Brookings can in no sense be called flood waters, but partakes of all of the characteristics contained in vari-

ous definitions of what constitutes surface water. In Thompson v. New Haven Water Co., 86 Conn. 597, 86 A. 585, 588, 45 L. R. A. (N. S.) 457, the court considered a large number of cases and stated that their conception of surface water in their jurisdiction was one not sufficiently comprehensive to embrace flood water escaped from channels in large volume and flowing in masses to its destination in some larger or more permanent body. The court further indicated through its observation that " 'surface water may be defined as waters on the surface of the ground, which are of a casual or vagrant character, following no definite course, and having no substantial or permanent existence, and which are lost by being diffused over the surface of the ground,' * * * with no permanent source of supply or regular course, * * * water is surface water while it is oozing through soil or diffusing and squandering itself over the surface, following no defined course." The court, further commenting upon the various definitions, states: "But they serve to indicate that water moving in volume, whose source is a stream, is excluded, and that conditions presenting the general appearance upon the surface of the earth of those created by rain or snowfall are those intended to be embraced. There are cases which appear to limit the term to water which had its immediate source in rains or melting snow. Crawford v. Rambo, 44 Ohio St. [279], 287, 7 N. E. 429." We are satisfied that the water which caused the damage was in no sense flood water, and that it was what is ordinarily known as surface water. The Supreme Court of Washington in the case of Miller v. Eastern Ry. & Lumber Co., 84 Wash. 31, 146 P. 171, 173, quotes with approval a definition of surface water from Kinney on Irrigation and Water Rights, § 318, and we quote: " ' "Surface" water may be defined as water on the surface of the ground, the source of which is so temporary or limited as not to be able to maintain for any considerable time a stream or body of water having a well-defined and substantial existence.' "

In Seufert v. Cook et al., 74 Cal. App. 528, 241 P. 418, 421, the court, after an examination of a number of cases touching the distinction between flood and surface waters, said: "The cases also touching upon these questions draw a clear distinction between what are called surface waters, i.e., rainwater moving across the

country, and not coming from any definite source, flood waters, or waters spreading out from overflowing streams having definite channels, and the changing of the waters ordinarily flowing within the banks of well-defined channels."

In a later case, Le Brun v. Richards, 210 Cal. 308, 291 P. 825, 828, 72 A. L. R. 336, the Supreme Court of California distinguished between flood waters and surface waters, as follows: "Flood waters are those which escape from a stream or other body of water and overflow the adjacent territory. McDaniel v. Cummings, supra [83 Cal. 515, 23 P. 795, 8 L. R. A. 575]; Gray v. Reclamation District, supra [174 Cal. 622, 163 P. 1024]; Horton v. Goodenough, supra [184 Cal. 451, 194 P. 34]. Surface waters are those which are produced by rainfall, melting snow, or springs, and which in the case of the two first-mentioned sources are precipitated, and in the case of the last-mentioned source, rise upon the land. See cases cited supra. Such waters are not divested of their character as surface waters by reason of their flowing from the land on which they first make their appearance onto lower land in obedience to the law of gravity."

To us it is quite clear that the heavy rain which fell, after it reached the ground, was no longer rain, but became water and falls within that classification of waters which is known as surface water, and therefore under the terms of the policy the damage caused to the automobile was included under paragraph C-3, as defined by paragraph K, which covers the peril known as "water damage."

█ The policy should be construed so as to carry out the intention of the parties, and it appears from the language of the whole instrument, viewed in the light of the surrounding circumstances, that the object and purpose of the contract was to insure respondent's automobile against water damage such as took place when the surface water broke through the basement windows of the garage. Contracts of insurance should be liberally construed to accomplish the purpose for which they were made. The reason for these rules is that the contract is written and prepared by the insurance company. Edge v. Insurance Co., 20 S. D. 190, 105 N. W. 281.

The judgment and order appealed from are affirmed.

All the Judges concur.