GLENS FALLS INS. CO. v. McCOWN.

No. 15114.

Court of Civil Appeals of Texas.
Fort Worth.

March 24, 1950.

Rehearing Denied April 21, 1950.

Holloway, Crowley & Hudson and Edgar H. Keltner, Jr., all of Fort Worth, for appellant.

Hyder & Honts and Wm. J. Chilcoat, and John B. Honts, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

In May of 1949 there occurred in certain portions of the City of Fort Worth a flood of perhaps unprecedented dimensions. Following extremely heavy rainfall, the water in the Trinity River, which runs through a considerable part of the city, rose until it left the banks of the river and then in several places flowed over the system of levees which paralleled the river, with the result that large areas of the city, both business and residential, were inundated.

Appellee McCown, a dealer in automobiles, had a number of automobiles on a lot in the flooded area. Some of the automobiles were moved away before the flood waters reached the lot but seven of them were left on the lot and were damaged by the flood waters. Appellee sued appellant, claiming that the damage to the automobiles was covered by a policy of insurance theretofore issued by appellant. Appellee recovered judgment for $2,057.30 in a non-jury trial, and appellant, the insurance carrier, has appealed.

What is designated as Item 3 of the policy begins with the following language:

"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto."

Next following the language just quoted there is a list of eight different coverages, the first of which is denominated "A– Comprehensive," another "E– Windstorm, Earthquake, Explosion, Hail or Water," and another "F– Combined Additional Coverage." There is no premium charge opposite coverages A and F, and it is admitted that appellant is liable, if at all, only under coverage E.

In a number of paragraphs under a heading "Insuring Agreements" the insurer agrees specifically to pay for certain losses under the several headings. Coverage A, for instance, referred to as "Comprehensive Loss of or Damage to the Automobile, Except by Collision or Upset," plainly appears to cover loss of the nature sustained in the present case.

The paragraph relating to coverage E reads as follows:

"To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by windstorm, hail, earthquake, explosion, external discharge or leakage of water except loss resulting from rain, snow or sleet."

The paragraph relating to coverage F reads as follows:

"To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by windstorm, hail, earthquake, explosion, riot or civil commotion, or the forced landing or falling of any aircraft or of its parts or equipment, flood or rising waters, external discharge or leakage of water except loss resulting from rain, snow or sleet."

■ The first question to be determined is whether or not we are entitled to look to the language of the paragraph last quoted, defining coverage F, in our effort to interpret the meaning of the language of the clause which defines coverage E. It is our opinion that we are not. Coverage F and the language in the policy defining it are no part of the contract of insurance made between appellant and appellee. It is declared in Item 3, quoted above, that "The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto." Appllant's liability can be neither enlarged nor restricted by the language found in coverages not contracted for. Appellee is not charged with notice of the language pertaining to coverages not in his contract of insurance, and there is nothing in the evidence to show that appellee had actual knowledge of the language pertaining to coverage F. As we view the matter, we must interpret coverage E, and find the limits of liability under such coverage, by looking to the language of that coverage.

Stripped of words that have no application to the present loss, coverage E provides insurance against "direct and accidental loss of or damage to the automobile, * * * caused by * * * external discharge or leakage of water except loss resulting from rain, snow or sleet." It appears to be conceded that the loss is not one to be treated as one resulting from rain after the rain had fallen and the water had formed into a flood. Poole v. Sun Underwriters Ins. Co. of New York, 65 S.D. 422, 274 N.W. 658. We get at once to the question, Was the flood a leakage or discharge of water?

■ There are some general rules of construction which may properly be ap-

plied to the case before us. "Insurance policies are contracts, and are governed by the rules of interpretation which are applicable to contracts generally, and this, notwithstanding the rule that contracts of insurance are to be strictly construed in favor of the insured." 24 Tex.Jur., p. 696. "The language used must be construed according to the evident intent of the parties to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto." Id., p. 699. "If the contract of insurance is expressed in plain and unambiguous language, the courts will not undertake to construe it otherwise than as the parties themselves intended." Id., p. 699. " * * * if the language used is ambiguous and obscure and does not itself disclose the intent, resort may be had to usage or to the circumstances existing at the time the contract was made." Id., p. 700. "The language used in a policy should be given a fair and reasonable construction, rather than a strained, unnatural or technical interpretation." Id., p. 700. "Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense." Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 231, 76 L.Ed. 416, " * * * language of a policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured." 24 Tex.Jur., p. 705.

█ It is plain that the parties intended that the policy should insure against some kinds of damage caused by water. Under the arguments advanced by the insurer, the coverage was rather narrow. It was intended to include only damage caused by leakage of a rather small amount of water, or by discharge of water from some place of confinement, as from water pipes, for instance. Under the arguments presented by the insured, the language of the policy was general and the coverage was broad. The spreading of the water from the river and its levee system was a discharge of water, well within the meaning of the policy.

In Poole v. Sun Underwriters Ins. Co. of New York, 65 S.D. 422, 274 N.W. 658, 659, the policy insured against loss caused by "discharge of water excluding damage caused by * * * flood." In the course of a severe rainstorm two feet of water gathered on a street and broke through the window of a basement in which the car was kept. A recovery was allowed on the ground that the damage was one insured against, and that it was not caused by a flood, liability for which was expressly excluded by the language of the policy. The court held that the gathering of surface waters did not constitute a flood. It seems to us, from a careful reading of the opinion in the case, that the insurer defended principally on the ground that the loss was caused by a flood, which expressly was not covered by that policy, rather than on the ground that there was not a leak or discharge of water within the meaning of the policy. We do not see that Henry v. Dubuque Fire & Marine Ins. Co., Mo.App., 185 S.W.2d 658, cited by appellee, is in point. The case went off on the proposition that water damage coverage was not included in the policy because no premium had been charged for it. Thus a construction of the water damage coverage clause was not required.

We must decide, giving the words their ordinary meaning, whether the flood in question was a leakage or discharge of water. We think that the conclusion is easily reached that the flood was no mere leak.

Resorting to the dictionaries, we find that the word discharge, whether used as a noun or a verb, has several meanings, but that there is something of a common idea or thought running through all of them. In the unabridged edition of Webster's New International Dictionary, Second Edition, discharge, as a noun, is variously defined in substance as follows: 1. Removal or unloading, as a cargo from a ship. 2. Release or acquittance from a legal obligation. 3. Legal release from confinement, as from prison, or from the military

service. 4. Removal from a place of office or employment. 5. Firing a charge, as from a gun, or letting off, as of arrows. 6. A flowing or issuing out; also, a rate of flow; emission; vent; as, a rapid discharge of water from a pipe, or a discharge from a wound.

Throughout these definitions runs the idea or thought of removal of a person or an object from a place of carriage, storage, restriction or confinement. By a discharge a person is set free from the confinement of prison, or from the obligations and duties imposed by law or contract. The unloading of goods from a ship, where they have been stored and carried, is called a discharge. The release of a missile from a gun is called a discharge, as is the flow of water from a pipe. If a dam should break, it seems to us that the ensuing flow of water would properly be called a discharge of water from the lake. Likewise, if a levee should break and release water from the channel where it had been confined, it seems to us that it would be proper to call it a discharge of water from such channel. We also think it would be proper to term the flow of water over the top of a levee as a discharge of water from the channel made by the river and levee system within which it would normally be contained.

The language of the coverage clause in question indicates to our minds that it was the intention of the parties that the policy should cover loss caused by the escape of water from some usual place of storage or confinement. We are not able to find in the language of the coverage clause anything to indicate that it was only a discharge of water in small amounts that was insured against. People would not ordinarily refer to a flood of the proportions here involved as a mere leakage or discharge of water, but on the other hand it is common under some circumstances to refer to an escape of a small amount of liquid as a flood, as, for example, the flooding of a carburetor on a gasoline engine, or the flooding of a room in a house from a flowing hydrant or a leaking pipe. If we are to say that only a discharge of water in small amounts was contemplated by the parties, then where shall we set the boundary line of coverage? By saying that the policy covered loss from leakage or discharge of water "except loss resulting from rain, snow or sleet," the parties indicated that they considered that rain, snow or sleet would be thought of as a leakage or discharge of water, and that loss therefrom would be covered except for the exclusionary clause, which fact in itself tends to exclude the idea that it was a mere discharge of water from a pipe or some other small container that was contemplated by the terms of the policy.

We feel that the views just expressed find support in the fact that the other hazards insured against under coverage E, to-wit, windstorm, hail, earthquake and explosion, were events of a violent and destructive nature, any one of which, with the possible exception of hail, might destroy the insured automobile. In other words, the language of the entire paragraph defining coverage E points to the fact that the parties contemplated the possibility of and intended that the coverage in question should insure against contingencies of a catastrophic nature.

We have given careful consideration to the appellant's contention that we should look to the language of coverage F in order to interpret the meaning of the language in coverage E. In the clause defining coverage F, the words "flood or rising waters" appear in addition to the term "discharge or leakage of water," which fact indicates that the writer of the paragraph defining coverage F did not consider that flood or rising waters were included within the meaning of the term discharge or leakage of water. But, for the reasons above stated, we are not able to see how appellee can be charged with notice or knowledge of the interpretation which the writer of coverage F may have placed on the terms in question. We do not undertake to say what the effect would have been on the case if it had been shown that appellee was familiar with the language of coverage F. Such a case is not before us, and we shall decide only the case which is before us.

The judgment of the trial court is affirmed.