SUN UNDERWRITERS INS. CO. OF NEW YORK v. BUNKLEY et al.

No. 15178.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 29, 1950.

Rehearing Denied Oct. 27, 1950.

metal clad houses which were each 111 feet wide, east and west, and 20 feet deep, north and south. One of the houses last mentioned, which are the only houses material to this suit, was located about fifty feet south of the other one. On May 17, 1949, and during that night, a very heavy rain fell, water ran into the two houses in question, and 2671 five weeks old chickens were drowned. During the night of May 22 another heavy rain fell, water again ran into one of the houses, and 1505 seven weeks old chickens were drowned.

There was in force at such time a policy of insurance issued by appellant which covered the chickens in the two houses and which insured appellee against loss or damage in the following language:

"This policy covers the property insured against direct loss or damage caused by:

"Fire or lightning (meaning thereby the commonly accepted use of the term lightning);

"Cyclone and tornado;

"Flood (meaning the rising of natural bodies of water);

"Collision, derailment or overturn of transporting conveyances;

"Windstorm and hail."

There were certain limiting and excepting clauses in the policy which did not relate to the loss suffered in the present suit.

The trial court, without a jury, rendered judgment in favor of appellee for the sum of $1710.50.

Appellee confesses that there is reversible error on account of the fact that there was no proof as to the value of the destroyed property. Appellant insists that judgment should be rendered in its favor on the ground that the policy did not insure against the loss in question.

It is clear that the policy did not insure against any and every damage that might be caused by water. It was limited to damage caused by flood. It is our opinion that the water which ran into the chicken houses and caused the chickens to drown cannot be regarded as a flood, either under the generally accepted definitions of the term flood, or under the definition of the

Blakeley & Blakeley and John F. Harrison, all of Dallas, for appellant.

Cantey, Hanger, Johnson, Scarborough & Gooch and Carlisle Cravens, all of Fort Worth, for appellees.

McDONALD, Chief Justice.

In May of 1949 appellee Bunkley was engaged in the business of raising chickens on a tract of land several miles east of Fort Worth. On said land there were fifteen or more chicken houses, including two

term which appears in the policy in the parenthetical phrase following the word flood.

■■ The courts have often had occasion to draw the distinction between floodwaters and surface waters. We have examined a number of cases, including those cited in 44 Tex.Jur., Water, sec. 11; 56 Am.Jur., Waters, secs. 3, 65, 92; 67 C.J., Waters, sec. 286; and 17 Words and Phrases, Perm.Ed., p. 183, Flood Water, and find that the courts have consistently recognized the difference between the two. Surface water is generally defined as that which is derived from falling rain or melting snow, or which rises to the surface in springs, and is diffused over the surface of the ground, while it remains in such diffused state. 56 Am.Jur., p. 547. Floodwaters have been defined as being those above the highest line of the ordinary flow of a stream. Id., p. 574. Surface waters are those which have diffused themselves over the surface of the ground, following no defined course or channel, and which have not gathered into or formed a natural body of water, and are lost by evaporation, percolation, or natural drainage. 67 C.J. p. 862. Floodwaters are those which, generally speaking, have overflowed a river, stream or natural water course and have formed a continuous body with the water flowing in the ordinary channel. Id., p. 863. For decisions which point out the distinction, see Poole v. Sun Underwriters Ins. Co. of N. Y., 65 S.D. 422, 274 N.W. 658; Thompson v. New Haven Water Co., 86 Conn. 597, 86 A. 585, 45 L.R.A., N.S., 457; Miller v. Eastern Ry. & Lumber Co., 84 Wash. 31, 146 P. 171; Seufert v. Cook, 74 Cal. App. 528, 241 P. 418; Le Brun v. Richards, 210 Cal. 308, 291 P. 825, 828, 72 A.L.R. 336. In the last cited case the court said: "Flood waters are those which escape from a stream or other body of water and overflow the adjacent territory. * * * Surface waters are those which are produced by rainfall, melting snow, or springs, and which in the case of the two first-mentioned sources are precipitated, and in the case of the last-mentioned source, rise upon the land. * * * Such waters are not divested of their character as surface waters

by reason of their flowing from the land on which they first make their appearance onto lower land in obedience to the law of gravity."

In Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397, floodwaters are defined as those being above the highest line of ordinary flow of a stream. See also, Southern Pac. Co. v. Proebstel, 61 Ariz. 412, 150 P.2d 81; McManus v. Otis, 61 Cal.App.2d 432, 143 P.2d 380; Thomson v. Public Service Commission, 241 Wis. 243, 5 N.W.2d 769; Maricopa County Municipal Water Conservation Dist. No. 1 v. Warford, 69 Ariz. 1, 206 P.2d 1168.

The definition of flood contained in the policy, to-wit, the rising of natural bodies of water, is not inconsistent with the definition of the term that is found in many judicial decisions, if we consider that the phrase natural bodies of water was intended to include natural watercourses. Appellee's brief appears to be an effort to demonstrate that the evidence was sufficient to support a finding that there was a rising of a natural body of water in the present case.

■ In 44 Tex.Jur., Water, sec. 7, it is said that the common idea of a natural watercourse is a river, stream or brook with permanent flow, but that the legal meaning is not so confined. To quote from the cited text: "If there is a channel, consisting of a well-defined bed with visible banks, down which water flows recurrently, there is a natural watercourse, though it be dry for months at a time."

An exhaustive discussion of natural watercourses is found in Hoefs v. Short, 114 Tex. 501, 273 S.W. 785, 40 A.L.R. 833, where the controlling question for decision was whether the waters of a named creek were surface waters, or waters to which irrigable rights would attach. The court said among other things, that in order to constitute a natural watercourse there must be something more than mere surface drainage over the entire face of a tract of land, occasioned by unusual freshets or other extraordinary causes. The court observed that all the authorities hold that a natural

watercourse should have bed, banks, and a permanent source of water supply, although it is not essential that the water flow all of the time. Quoting from one authority, the court said that the source of water supply must be sufficient to establish and maintain a running stream for considerable periods of time, and cited other authority to the effect that the question in every case is whether the water has formed for itself a visible course or channel, and is of sufficient magnitude or volume to be serviceable to persons through or along whose lands it flows. A large number of cases bearing on the question are cited in the annotations in 40 A.L.R. 839, and 81 A.L.R. 262.

Appellee testified concerning the lay of his land and also introduced in evidence the testimony of a surveyor who had made a survey of the land and had prepared a topographical map showing the elevation at many points on the land. The land sloped gently downward toward and beyond the two chicken houses. Altogether there was a drop of four and two-tenths feet in 1140 feet, a rate of four-tenths feet per 100 feet. At the west end of the chicken houses there was a slight depression, some eight or ten feet across, and seven-tenths of a foot in depth at its lowest point. As the water reached the first house, some of it passed to the left of the houses and poured over a low concrete foundation at the west end of the houses, thus causing the loss of the chickens. It is appellee's contention that the slight depression at the west end of the houses should be treated as a natural watercourse and that the overflow should be considered a flood within the meaning of the policy.

In response to questions about the depression at the west end of the houses, appellee said that the place where the water ran just west of the houses was just a little place, and that it was slightly lower than the rest of the area around it; that it was not a ditch or anything like that; that it was not a creek; that it did not have any banks, that it was very little lower than the places around it. He was asked: "All you have there in this area that you describe as a natural watercourse is just a little lower area than the rest of the ground around there, isn't is?" and answered: "That's right." He said that the only time water was in it was when it rained, and that the water never stayed there for any appreciable length of time.

Appellee testified that the excessive rainfall caused the water to spread over the entire area of his land, and that it was about four inches deep where it flowed over the low concrete foundations of the chicken houses. He said that the water usually ran along the low area west of the houses when it rained. There are three photographs of the houses and adjoining area in the record.

In 28 Words and Phrases, Perm.Ed., p. 56, Natural Water Course, appear citations of numerous cases which define the term natural watercourse. In all of them it is said that there must be a distinct channel, sides and banks, and a permanent source of supply. Definitions in 56 Am.Jur., Waters, secs. 6–11; and 67 C.J., Waters, secs. 3–7, are to the same effect.

We must examine the evidence in the light most favorable to appellee, and must affirm the judgment of the trial court if there is any evidence of probative value which tends to support it. But the evidence shows without dispute that the area just west of the chicken houses was not a natural watercourse, and that the excessive flow of surface water west of the houses cannot be brought within the definition of flood as the term is generally defined in the decisions, or within the definition contained in parenthesis in the policy. Under all of the authorities, the water which came into the chicken houses can be regarded only as surface waters, and not as a flood. It is undisputed that the water was not backed up from a river, creek or other natural watercourse.

It follows that the loss was not within the insuring provisions of the policy, and that appellee must be denied a recovery.

Reversed and rendered.