

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00083-CV

Mike and Geri **JONES**,
Appellants

v.

Robert and Patricia **ZEARFOSS**,
Appellees

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 12-00986-CV-A
Honorable W.C. Kirkendall, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  January 7, 2015

AFFIRMED

This case involves alleged misrepresentations and nondisclosures made during the sale of a residence. Mike and Geri Jones sued Robert and Patricia Zearfoss asserting DTPA, statutory real estate fraud, common law fraud, negligent misrepresentation, and negligence claims. Subsequently, the Zearfosses filed a motion for summary judgment, asserting both no-evidence and traditional grounds. The trial court granted the Zearfosses' motion for summary judgment and this appeal ensued.

We affirm the trial court's summary judgment.

**BACKGROUND**

In August of 2009, the Zearfosses' two-story house was burglarized. The burglars damaged an upstairs bathroom that caused water to flow through the floor joists, down the walls, and onto the first floor of the house. The burglary was investigated the following day by the Guadalupe County Sheriff's Department. Two offense reports were generated following the investigation.

On the day of the burglary, the Zearfosses were on vacation. That evening, a friend of the Zearfosses, Robert Nelson, discovered the burglary. When Nelson entered the house, he noticed signs of water damage. He then undertook efforts to clear the water from the second floor by poking holes in the ceiling in several areas, putting down buckets to catch the water, mopping the water, and drying the furniture. The following day, Nelson notified Mr. Zearfoss of the burglary and the water damage.

Upon learning of the water damage, Mr. Zearfoss made a claim under his homeowner's insurance policy. After receiving notice of the claim, the insurance company arranged for two separate professional companies to conduct water extraction and dry-out operations. The insurance company also retained a construction company to perform repairs and reconstruction on the house. The cost of remediation and reconstruction totaled over $40,000.

After the remediation and reconstruction of the house were completed, the Zearfosses decided to sell their house. The Joneses showed an interest. The parties began negotiations through their respective real estate agents. Before closing, two events occurred. First, the Zearfosses provided the Joneses with a written Seller's Disclosure Notice. This notice stated: "[w]ater penetration: upstairs toilet leaked and caused water damage downstairs. Damage was covered by insurance and was professionally corrected." Second, the Joneses inspected the house through an agent they chose and then executed a "Texas Association of Realtors Buyer's Walk-

Through and Acceptance Form." In that form, the Joneses represented (1) the property was inspected by an inspector of their choosing, (2) they reviewed the inspection report, (3) they walked through and reviewed the property, and (4) they accepted "the Property in its present condition."

A day after the Joneses executed the "Walk-Through and Acceptance Form," the parties closed the sale. The "One to Four Family Residential Contract (Resale)" contract executed by the parties at closing included an "as is" clause whereby the Joneses again "accept[ed] the Property in its present condition."

More than two years after they purchased the house, the Joneses discovered through a retained expert, Dr. Donald Schaezler, and other sources that (1) more than 50,000 gallons of water flowed through their house during the 2009 event, and (2) mold contamination resulted. The Joneses filed suit against the Zearfosses.

## DISCUSSION

The Joneses contend the trial court erred in granting the Zearfosses' motion for summary judgment in that (1) the Joneses presented evidence of misrepresentations, and (2) the Zearfosses had a legal duty to fully disclose the facts surrounding the 2009 water event.

### A. Standard of Review

A no-evidence motion for summary judgment entitles the movant to summary judgment on the ground there is no evidence of one or more essential elements of a legal claim advanced by the nonmovant. TEX. R. CIV. P. 166a(i). The nonmovant bears the burden of presenting evidence raising a genuine issue of material fact on each challenged element. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the nonmovant cannot identify and produce more than a scintilla of evidence that raises a genuine issue of material fact, a no-evidence motion must be granted. *Id.*; *Trejo v. Laredo Nat'l Bank*, 185 S.W.3d 43, 46–47 (Tex. App.—San Antonio 2005,

no pet.). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded jurors to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

A traditional summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1994). The evidence favoring the nonmovant must be taken as true and every reasonable inference drawn in his favor. *Nixon*, 690 S.W.2d at 548–49; *see also City of Keller*, 168 S.W.3d at 822 (crediting evidence). If the movant's motion and evidence establish the movant's right to judgment as a matter of law, the burden shifts to the nonmovant to raise a material fact issue sufficient to defeat summary judgment. *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

We review both the no-evidence and the traditional motions for summary judgment de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We address each motion for summary judgment separately.

**B.      No-Evidence Motion For Summary Judgment**

The Zearfosses' no-evidence motion for summary judgment centers on the absence of evidence of a material misrepresentation.

The Joneses challenge the no-evidence summary judgment asserting they offered evidence of misrepresentations of the condition of the property. They contend their evidence, at a minimum, raised fact questions as to the veracity of the Zearfosses' disclosures.

*1.      Applicable Law*

A material misrepresentation is an element common to causes of action for DTPA, common law fraud, statutory fraud, and negligent misrepresentation. *Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002) (noting misrepresentation actionable under DTPA); *In re FirstMerit Bank,*

*N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding) (listing elements of common law fraud as including a material misrepresentation); TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2013) (listing false representation of material fact as an element of statutory fraud).

"A fact is material if it would likely affect the conduct of a reasonable person concerning the transaction in question." *Fleming v. Curry*, 412 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Materiality centers on whether a "reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Id.* at 737 (citing *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 338 (Tex. App.—Houston [14th Dist.] 1991, no writ) (op. on reh'g)).

*2.      Analysis*

The Joneses argue (a) the quality of water remediation, (b) the origination of the water, and (c) the minimization of the water event are evidence of a material misrepresentation precluding a no-evidence summary judgment in favor of the Zearfosses on their causes of action.

a.      Quality of Water Remediation

The Joneses argue a material fact exists on whether the Zearfosses deceptively described the remediation as a "professional" job in the Seller's Disclosure Notice when, in fact, the remediation company failed to conduct mold testing. As evidence, the Joneses presented Dr. Schaezler's affidavit and reports, and Mr. Zearfoss's deposition testimony. The Joneses direct us to the following testimony: (1) Dr. Schaezler's opinion that the moisture left from the 2009 water event caused mold accumulation in the house, and (2) Mr. Zearfoss's admission that he did not direct the remediation technicians to perform mold testing and is not aware if any was done. Based on this evidence, the Joneses assert the Zearfosses' disclosure that the water damage "was professionally corrected" was a material misrepresentation.

In our review of the summary judgment evidence, we note (1) Dr. Schaezler does not testify that, on the day of the sale of the house, mold was present; (2) there is no evidence that mold was present on the day of the sale of the house; (3) Mr. Zearfoss testified he did not direct the remediation company to do mold testing but was satisfied there was no mold growth in the house after he witnessed a remediation technician performing humidity testing following the 2009 water event; (4) there is no evidence that the remediation technicians were not "professionals"; (5) there is no evidence that the remediation workmanship was faulty; and (6) there is no evidence that testing would have prevented the accumulation of mold.

Mike Jones's uncontroverted testimony, on the other hand, shows that (1) he provided no evidence that the Zearfosses knew that the remediation company was not professionally competent, and (2) there was nothing untruthful about the Zearfosses representing the contractors' work as the corrective work of professionals in their fields.

We conclude the Joneses' argument that the Zearfosses misrepresented remediation as "professional" work is not supported by the evidence.

b.     Origination of Water

The Joneses next assert that in the Seller's Disclosure Notice, the Zearfosses misrepresented the upstairs "toilet" as the source of water. In support, the Joneses direct us to Nelson's testimony that water could have come from the toilet, the sink, or both.

We note the Joneses' claims are based on the damage to the house caused by the mold. As such, we must determine whether a reasonable person would attach importance to whether the water that allegedly gave rise to the mold was from the toilet or the sink. *See id.* at 736–37.

The record shows Nelson testified the source of water was the upstairs bathroom. He did not remember if the water came from the sink or the toilet in that bathroom. Whether the source of the water was the sink or the toilet located in the same bathroom is not a material fact to the

presence of mold. *See id.* We therefore conclude the Joneses failed to present evidence of a material misrepresentation.

              c.         <u>Minimization of the Water Event</u>

The Joneses contend that in the Seller's Disclosure Notice, the Zearfosses misrepresented the water event by minimizing it as a "leak" instead of describing it to be an "overflow." They argue that the words have different meanings, and it was misleading to use the word "leak" when an "overflow" occurred. As evidence of the misrepresentation, they point to Mr. Zearfoss's deposition testimony where he stated the toilet "overflowed."

The Zearfosses argue that whether the water event was classified as a "toilet leak" or an "overflow" is immaterial because the Zearfosses disclosed that the water leak caused damage to the downstairs area and that it was covered by insurance and professionally corrected. We agree with the Zearfosses.

Standing alone, the information that water traveled from the second to the first floor would induce a reasonable buyer to act on the information and perform mold testing before buying the house. *See id.* at 737. Information pertaining to an insurance claim and subsequent remediation work also would likewise induce a reasonable buyer to act on the information and perform mold testing before committing to buy a house. *Id.* On the other hand, information only regarding an overflow of water from a toilet would not induce a reasonable buyer to act on the information and perform mold testing before buying the house. *Id.* For these reasons, information on whether the toilet "leaked" or "overflowed" alone is not a material misrepresentation. Accordingly, the Joneses failed to present evidence that the Zearfosses' disclosure of a water "leak" was a material misrepresentation in light of the disclosure made by the Zearfosses of water damage to the first floor, the insurance claim, and the remediation work that followed.

*3.     Conclusion*

The Zearfosses' no-evidence motion for summary judgment asserted the absence of evidence of a material misrepresentation, an essential element of the Joneses' DTPA, common law fraud, statutory fraud, and negligent misrepresentation claims. The Joneses' summary judgment evidence failed to raise a genuine issue of material fact supporting a material misrepresentation. *See Mack Trucks*, 206 S.W.3d at 582. Accordingly, the trial court did not err in granting the Zearfosses' motion for no-evidence summary judgment on the element of material misrepresentation. *See id.*

**B.     Traditional Motion for Summary Judgment**

The Zearfosses moved for a traditional summary judgment on the Joneses' negligence claim on the grounds they either had no duty to disclose or satisfied their duty to disclose. The Joneses responded that the evidence showed a genuine issue of material fact because the Zearfosses failed to fully disclose all important facts concerning the property's condition.

*1.     Applicable Law on Duty to Disclose*

Generally, to prove a negligence action, the plaintiff must establish the defendant had a duty to the plaintiff. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). "A seller of a house is charged only with [the duty to disclose] such material facts as to put a buyer exercising reasonable diligence on notice of the condition of the house." *Cole v. Johnson*, 157 S.W.3d 856, 860–61 (Tex. App.—Fort Worth 2005, no pet.). If a material fact known by the seller is not discoverable by the exercise of ordinary care and diligence by the purchaser, then a seller is under a duty to disclose that fact. *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied).

On the other hand, "[a] seller has no duty to disclose facts he does not know." *Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995). Likewise, a seller is

not liable for failing to disclose what he only should have known. *Id.*; *Myre*, 307 S.W.3d at 843–44. This is because a seller has no duty to investigate any concerns he may have, nor is he is required to disclose any of those concerns. *Prudential Ins. Co.*, 896 S.W.2d at 162.

*2.    Analysis*

The Zearfosses contend they disclosed all information they were required to disclose. Therefore, they met their duty.

The Joneses contend (1) the Zearfosses' disclosure of the water event was insufficient to place them on notice, (2) the Zearfosses failed to disclose the mold contamination and the absence of mold testing during the water remediation, and (3) the Zearfosses failed to disclose the property flooded in the Seller's Disclosure notice.

a.    Did the Zearfosses Have a Duty to Describe the Water Event In Detail?

The Joneses contend the Zearfosses' disclosure of the water event was inadequate as a matter of law because they withheld important information related to the severity of the water damage. Specifically, they allege they were not informed that (1) over 50,000 gallons of water flowed overnight into the walls, floor joists, and ceiling of the house; and (2) the cost to repair the water damage exceeded $40,000. The Joneses argue that any reasonable person would consider these facts important and expect a seller to disclose them.

The Zearfosses contend they discharged their duty by disclosing sufficient facts about the water damage to place the Joneses on notice. We agree.

The record before us shows the Zearfosses disclosed an upstairs water leak which caused damage to the downstairs area requiring professional remediation. They also disclosed they had an insurance claim. Because the disclosure placed the Joneses on sufficient notice of a water event, the Zearfosses met their disclosure duty. With this information, the Joneses could have exercised due diligence to obtain additional information on the extent of the water "leak."

      b.      <u>Were the Zearfosses under a Duty to Disclose Unknown Mold and to Test for Mold?</u>

The Joneses next contend the Zearfosses failed to disclose the house was contaminated with mold and failed to test for mold.

There is no summary judgment evidence the house was contaminated with mold *at the time the sale took place*. There is likewise no evidence the Zearfosses had knowledge of the presence of mold in the house *at the time the sale took place*. Although Mr. Zearfoss asked the remediation technicians to ensure there was no mold, he had no duty to investigate whether mold was present prior to selling the house to the Joneses. *Prudential Ins. Co.*, 896 S.W.2d at 162. There is no duty to disclose unknown conditions or concerns a seller has regarding a house. *Id.*

The Joneses further contend the Zearfosses had a duty to disclose that no mold testing was done during the water remediation process. We disagree with this contention. First, Mr. Zearfoss testified that he did not direct the remediation technicians to perform mold testing but was satisfied that no mold was present when he witnessed humidity testing by the remediation technicians. Second, the remediation disclosure gave the Joneses sufficient notice that water damage was remediated. The Joneses, in exercising reasonable diligence, had an opportunity then to request further information on the extent of remediation before buying the house. *See Cole*, 157 S.W.3d at 860–61. Once the Zearfosses disclosed that water damage remediation took place, the Zearfosses had no duty to disclose whether mold testing was performed on their house. The Zearfosses' duty to disclose was satisfied when they disclosed the water damage event and the remediation, both material facts.

      c.      <u>Did the Zearfosses Breach a Duty by not Disclosing "Previous Flooding Into the Structures" in the Seller's Disclosure Notice?</u>

The Joneses next contend the Zearfosses did not disclose the flooding event or misrepresented that there was no flooding into the structure of the house by marking "no" in the

portion of the Seller's Disclosure Notice that required information on "Previous Flooding Into the Structures."

The Zearfosses contend the Seller's Disclosure Notice asked them to mark "Yes" if they were aware of "Previous Flooding Into the Structures," and "No" if they were not. The Zearfosses argue the 2009 water event did not constitute "flooding" under Texas law nor did it constitute "previous flooding into the structures." Specifically, they argue (1) under Texas law, floodwaters result from an overflowed river, stream, or natural water course; and (2) the 2009 water damage was the result of water flowing from within the house and not from floodwater flowing into the house from outside. We agree with the Zearfosses.

Under Texas law "[f]loodwaters are those which, generally speaking, have overflowed a river, stream or natural water course and have formed a continuous body with the water flowing in the ordinary channel." *Sun Underwriters Ins. Co v. Bunkley*, 233 S.W.2d 153, 155 (Tex. App.— Fort Worth 1950, writ ref'd). A natural watercourse is considered to have "bed, banks, and a permanent source of water supply, although it is not essential that the water flow all the time." *Id*. at 155–56.

When an excessive flow of water does not come from the overflow of a river, creek, or other watercourse, it cannot be brought within the definition of flooding. *Id*. at 156. When water comes from within the plumbing system of a home, it does not constitute flooding. *State Farm Lloyds v. Marchetti*, 962 S.W.2d 58, 61 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

The facts are undisputed that the 2009 water event occurred when an upstairs bathroom was vandalized. The water event flowed from the home's plumbing system and was not floodwater that came "into" the structures. Therefore, the Zearfosses met their duty when they marked "No" on the Seller's Disclosure Notice's entry relating to "previous flooding into the structures." We

also note that by marking "No," they did not misrepresent the 2009 water event as alleged by the Joneses.

*3.      Conclusion*

The Zearfosses met their duty by describing the 2009 water event and the remediation work. They did not have a duty to describe in detail the remediation work, the mold potential, or any concern about mold contamination. Finally, the Zearfosses correctly stated in the Seller's Disclosure Notice that their house had not suffered "previous flooding into the structures." By doing so, they did not misrepresent the 2009 water event.

## C.      Acceptance of "The Property In Its Present Condition" Clause (or "As Is" Clause)

Because we affirm the summary judgment on the basis that there is no evidence of a material representation and no duty on the part of the Zearfosses, we need not address the "as is" clause in the "Walk-Through and Acceptance Form" and the "One to Four Residential Contract (Resale)." *See* TEX. R. APP. P. 47.1.

### CONCLUSION

In response to the Zearfosses' motions for summary judgment, the Joneses did not present evidence to raise genuine issues of material fact. The trial court did not err in granting the Zearfosses' motion for summary judgment on the Joneses' DTPA, statutory real estate fraud, common law fraud, negligent misrepresentation, and negligence claims. The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice