ACCEPTED
01-14-00556-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 5:50:26 PM
CHRISTOPHER PRINE
CLERK

## CAUSE NO. 01-14-00556-CV

IN THE COURT OF APPEALS FOR THE FIRST COURT OF APPEALS DISTRICT OF TEXAS HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 5:50:26 PM
CHRISTOPHER A. PRINE
Clerk

### MIKE BIRNBAUM AND BEVERLY BIRNBAUM,
Appellants

VS.

### GENA J. ATWELL, ET AL.
Appellees

ON APPEAL FROM THE 166TH JUDICIAL DISTRICT COURT OF BEXAR COUNTY, TEXAS CAUSE NOS. 2011-CI-00445 AND 2013-CI-15152

### BRIEF OF APPELLEES PHYLLIS BROWNING, PHYLLIS BROWNING COMPANY AND MIMI WEBER

THORNTON, BIECHLIN, SEGRATO, REYNOLDS & GUERRA, L.C.
**Vaughan E. Waters**
State Bar No. 20916700
100 N.E. Loop 410, Suite 500
San Antonio, Texas 78216
210-342-5555; 210-525-0666 (fax)
ATTORNEYS FOR APPELLEES
PHYLLIS BROWNING, PHYLLIS BROWNING COMPANY AND MIMI WEBER

**ORAL ARGUMENT REQUESTED**

# NAMES OF THE PARTIES

Pursuant to and in compliance with Rule 38, Tex. R. App. P., the parties to this appeal are:

**MIKE BIRNBAUM AND
BEVERLY BIRNBAUM,** Appellants

COUNSEL FOR APPELLANTS:

**BRIN & BRIN, P.C.**
Ms. Lorien Whyte
State Bar No. 24042440
6223 IH 10 West
San Antonio, TX 78201
210/341-9711; 210/341-1854 (fax)
lwhyte@brinandbrin.com

**KUSTOFF & PHIPPS, LLP**
Mr. Daniel O. Kustoff
State Bar No. 11770515
4103 Parkdale St.
San Antonio, TX 78229
210/614-9444; 210/614-9464 (fax)
dkustoff@kplegal.com

**THE McCLENAHAN LAW FIRM,
PLLC**
Mr. Barry A. McClenahan
State Bar No. 13404400
1901 N.W. Military Hwy., Suite 218
San Antonio, TX 78213
210/525-9600; 525-9602 (fax)
barry@mcclenahanlawfirm.com

**GENA J. ATWELL,** Appellee

COUNSEL FOR APPELLEE:     **FORD MURRAY, PLLC**
Mr. S. Mark Murray
State Bar No. 14729300
10001 Reunion Place, Suite 640
San Antonio, TX 78216
210/731-6400; 210/731-6401 (fax)

**PHYLLIS BROWNING,
PHYLLIS BROWNING COMPANY
AND MIMI WEBER,** Appellees

COUNSEL FOR APPELLEES:     **THORNTON, BIECHLIN,
SEGRATO, REYNOLDS &
GUERRA, L.C.**
Mr. Vaughan E. Waters
State Bar No. 20916700
100 N.E. Loop 410, Suite 500
San Antonio, Texas 78216
210/342-5555; 210/525-0666 (fax)
vwaters@thorntonfirm.com

TRIAL COURT JUDGE:     **The Honorable Larry Noll
408th Judicial District Court
Bexar County, Texas**

# REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 39, Tex. R. App. P., Appellees respectfully request oral argument in this case.

# TABLE OF CONTENTS

Page

NAMES OF THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (i)

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (ii)

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (iii)

LIST OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (iv)

I.    STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

        (1)    ISSUE NO. 1: THE TRIAL COURT DID NOT
              ERR IN GRANTING THE BROWNING
              DEFENDANTS' MOTION FOR SUMMARY
              JUDGMENT

        (2)    ISSUE NO. 1: THE TRIAL COURT DID NOT ERR
              IN DENYING THE BIRNBAUMS' MOTION FOR
              NEW TRIAL

III.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# LIST OF AUTHORITIES

## CASES

PAGE

*Accord v. General Motors Corp.*, 669 S.W.2d 111, 114 (Tex. 1984) . . . . . . . . . 16

*Alvarez v. Anesthesiology Associates*,
967 S.W.2d 871, 882-883 (Tex. App.—Corpus Christi 1998, no pet.) . . . . . . . . 32

*Atlantic Mutual Insurance Co. v. Middleman*, 661 S.W.2d 182, 185
(Tex. App.—San Antonio 1983, writ ref'd, n.r.e.) . . . . . . . . . . . . . . . . . . . . 13

*Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990) . . . . . . . . . . 11

*Blum v. Julian*, 977 S.W.2d 819, 823
(Tex. App.—Fort Worth 1998, no pet. hist.) . . . . . . . . . . . . . . . . . . . . . . . 16

*Cherry v. McCall*, 138 S.W.3d 35, 39
(Tex. App.—San Antonio 2004, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004) . . . . . . . . . . . . . . . . . 13

*Doncaster v. Hemaiz*, 161 S.W.3d 594, 601
(Tex. App.—San Antonio 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42
(Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969) . . . . . . . . . . . . . . . . . . . . . 17

*Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 383
(Tex. App.—Houston [1st Dist.] 2013, pet. denied) . . . . . . . . . . . . . . . . . . . 14

*Federal Land Bank Association of Tyler v. Sloane*,
825 S.W.2d 439, 442 (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172
(Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fort Brown Villas III Condo. Ass'n v. Gillenwater*,
285 S.W.3d 879, 882 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Frazier v. Yu*, 987 S.W.2d 607 (Tex. App.— Fort Worth 1999,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Guthrie v. Suiter*, 934 S.W.2d 820, 825-26
(Tex. App.—Houston [1st Dist.] 1996, no writ) . . . . . . . . . . . . . . . . . . . 20

*Hall v. Rutherford*, 911 S.W.2d 422, 425
(Tex. App.–San Antonio 1995, writ denied) . . . . . . . . . . . . . . . . . . . . . . 18

*In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d
(Tex. App.—Houston [1st Dist.] 2006, orig proc.) . . . . . . . . . . . . . . . . . 17

*In re Estate of Denman*, 362 S.W.3d 134, 140-41
(Tex. App.—San Antonio 2011, pet. denied) . . . . . . . . . . . . . . . . . . . . . 12

*Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220
(Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jones v. Blume*, 196 S.W.3d 440, 447
(Tex. App.—Dallas 2006, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Jones v. Zearfoss*, 2015 WL 101592
(Tex. App.—San Antonio 2015 (no pet. hist.) . . . . . . . . . . . . . . . . . . . . . 21

*Kim v. Harstan, Ltd.*, 286 S.W.3d 629, 634
(Tex. App.—El Paso 2009, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . 29

*LBM Investments, Inc. v. Caribe Properties, Inc.*,
2013 WL 5658555 (Tex. App.—Beaumont 2013, pet. denied) . . . . . . . . . . . . . . 23

*Lim v. Baker*, 2007 WL 4180153
(Tex. App.—San Antonio 2007, no pet.) ................. 22

*Lim v. Lomeli*, 2007 WL 2428078
(Tex. App.—San Antonio 2007, no pet.) ................. 26

*Moron v. Heredia*, 133 S.W.3d 668, 671
(Tex. App.–Corpus Christi 2003, no pet.) ................. 18

*Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43
(Tex. 1998) ................. 13

*Paciwest, Inc. v. Warner Alan Props., LLC*,
266 S.W.3d 559, 567 (Tex. App.—Fort Worth 2008, pet. denied) ......... 12

*Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998) ........... 11

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215
(Tex. 2003) ................. 11

*Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644
(Tex. 1995) ................. 11

*Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989) ........... 20

*S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 855
(Tex. App.—Dallas 2011, no pet.) ................. 16

*Salinas v. Rafati*, 948 S.W.2d 286, 288 (Tex. 1997) ................. 15

*Tucker v. Atlantic Richfield Co.*, 787 S.W.2d 555, 557
(Tex. App.–Corpus Christi 1990, writ denied)) ................. 18

*UMC, Inc. v. Arthur Bros., Inc.*, 626 S.W.2d 819, 820
(Tex. App.—Corpus Christi 1981), writ ref'd, n.r.e.
647 S.W.2d 244 (Tex. 1982) ................. 17

*Utilities Pipeline Co. v. American Petrofina Marketing*,
760 S.W.2d 719, 723 (Tex. App.—Dallas 1988, no writ) ................. 15

*Volmich v. Neiman*, 2013 WL 978770
(Tex. App.—Fort Worth 2013, no pet.) ......................... 23

*Weaver v. Bell*, No. 03-04-00169-CV, 2005 WL 1364046,
at *15 (Tex. App.—Austin. June 10, 2005, no pet.) (mem. op.) ........... 19

*White Oak Bend Municipal Utility District v. Robertson*,
WL 245957(Tex. App.—Houston [14th Dist.], pet. denied) ............... 20

*Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex. 1993) ................ 11

## STATUTES, RULES,  AND OTHER AUTHORITIES

Tex. R. App. P. 9 ....................................... 34

Tex. R. App. P. 33.1 .................................... 15

Tex. R. App. P. 38 ..................................... (i)

Tex. R. App. P. 38.2 ................................... 1

Tex. R. App. P. 39 ................................... (iii)

Texas R. App. P. 44.1(a) ................................ 10

Texas R. App. P. 52(a) ................................. 15

Tex. R. Civ. P 166a(c). ................................ 11

Tex. R. Civ. P 166a(d). ................................ 19

Tex. R. Civ. P 166a(e). ................................ 18

(viii)

Tex. R. Civ. P 166a(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IN THE COURT OF APPEALS FOR THE FIRST
COURT OF APPEALS DISTRICT OF TEXAS,
HOUSTON, TEXAS

MIKE BIRNBAUM AND BEVERLY BIRNBAUM,
Appellants

VS.

GENA J. ATWELL, ET AL.
Appellees

ON APPEAL FROM THE 166TH JUDICIAL
DISTRICT COURT OF BEXAR COUNTY, TEXAS
CAUSE NOS. 2011-CI-00445 AND 2013-CI-15152

BRIEF OF APPELLEES PHYLLIS BROWNING,
PHYLLIS BROWNING COMPANY AND MIMI WEBER

TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS OF
THE STATE OF TEXAS, SAN ANTONIO, TEXAS:

NOW COME PHYLLIS BROWNING, PHYLLIS BROWNING COMPANY

AND MIMI WEBER ("BROWNING"), Appellees in the above entitled and

numbered cause, and file this their Brief of Appellees, pursuant to and in accordance

with Rule 38.2, Tex. R. App. P.; and in support thereof would respectfully show this

1

Honorable Court as follows:

## I.

## STATEMENT OF THE CASE

This is an action arising out of the purchase of a condominium unit and related condominium interest. Defendant/Appellants PHYLLIS BROWNING and MIMI WEBER of PHYLLIS BROWNING COMPANY (hereinafter all jointly referred to as the "the BROWNING Defendants") were the broker and realtors involved in the transaction, that being a sale by Defendant/Appellee GENA J. ATWELL ("ATWELL") to Plaintiffs/Appellants MIKE BIRNBAUM and BEVERLY BIRNBAUM ("the BIRNBAUMS"). The BIRNBAUMS brought suit against ATWELL and the BROWNING Defendants, as well as other parties not involved in this appeal, after they discovered water intrusion in the condominium unit following a heavy rainfall.

ATWELL and the BROWNING Defendants moved for traditional and no-evidence summary judgment on all claims, which motion was granted by the Honorable Larry Noll, presiding of the 408th Judicial District Court of Bexar County, Texas; the claims for which summary judgment was granted were severed and assigned a separate cause number, and on March 18, 2014 the Honorable Peter A.

2

Sakai, presiding judge of the 225th Judicial District Court of Bexar County, Texas, signed the final order which is the subject of this appeal. The BIRNBAUMS filed motions for new trial, which were subsequently denied by Judge Noll.

## II.

### ISSUES PRESENTED

ISSUE NO. 1 RESTATED: THE TRIAL COURT DID NOT ERR IN GRANTING THE BROWNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ISSUE NO. 2 RESTATED: THE TRIAL COURT DID NOT ERR IN DENYING THE BIRNBAUMS' MOTION FOR NEW TRIAL

## III.

### STATEMENT OF FACTS

ATWELL was the owner of a condominium unit—Unit #1004—at a high-end, gated condominium complex located at 200 Patterson in Alamo Heights, San Antonio, Texas, a property which she had purchased with her now deceased husband in 1999 (hereinafter "the property"). 6 C.R. 348, 364. On June 28, 2007 ATWELL decided to list the property for sale with PHYLLIS BROWNING of PHYLLIS BROWNING COMPANY ("BROWNING"), for $2.4 Million; on that same day, the BIRNBAUMS, through their realtor, MIMI WEBER of PHYLLIS BROWNING

3

COMPANY, expressed an interest in the property. *Id.*; 6 C.R. 376; 7 C.R. 14.

By way of background, MIKE BIRNBAUM has been a Texas licensed attorney and a licensed real estate broker for more than 30 years. 7 C.R. 6, 8, 173-177, 181-182. He is a former partner of Trammel Crow (one of the largest real estate development companies in the world), and Weitzman Properties and Censor (some of the largest real estate development and management companies in the United States). 7 C.R. 6, 173-177. Under BIRNBAUM'S leadership, Trammel Crow developed three million six hundred thousand (3,600,000) square feet of office, retail and industrial buildings. 7 C.R. 7-8. Presently, BIRNBAUM owns and operates his own real estate company which, among other things, has developed over 120,000 square feet of office, retail and industrial building, and presently manages over two million (2,000,000) square feet of commercial buildings. *Id.*

The day after ATWELL listed the property, the BIRNBAUMS and WEBER viewed the property without anyone else present. 7 C.R. 14. During that visit, at the BIRNBAUMS' request, WEBER contacted BROWNING and made a verbal offer of $2.2 million for the property, which ATWELL accepted. WEBER prepared an earnest money contract, which ATWELL and BIRNBAUM signed ("the Earnest Money Contract"). 7 C.R. 15-16, 90-98.

The Earnest Money Contract stated, "Buyer accepts the property in its present condition... ." C.R. 92. At the time they signed the earnest money contract, the BIRNBAUMS received a "Seller's Disclosure Statement," which ATWELL filled out

4

when she listed the property and in which she disclosed the fact that flooding and water penetration had taken place on the property and the condominium building itself. The handwritten explanation said: "Unit had some water problems before we bought it. All fixed and no water problems since." 7 C.R. 16, 90-98, 101-104. Although ATWELL had experienced some minor leaks in the lower level powder room within the first two or three years after she purchased the property in 1999, she fixed those leaks within that time and never experienced any further leaks. 6 C.R. 365. Thus, the import of that disclosure was that ATWELL had repaired all of the water penetrations to the property and had not had problems since the repairs. 6 C.R. 368. This was, in fact, precisely how the BIRNBAUMS also interpreted this statement. 7 C.R. 238 (¶4), 241 (¶4).

After signing the Earnest Money Contract, but before closing, attorney and real estate broker BIRNBAUM hired an inspector to inspect the property. 7 C.R. 17. The inspector's report indicated, among other things, that the inspector found evidence of water infiltration that resulted in some water damage to the property. 7 C.R. 107-114. There was also a recommendation to replace the property's patios after BIRNBAUM learned from the building manager, Roy Johnson, that the patios leaked. 7 C.R. 18.

In addition to hiring an inspector, attorney and real estate broker BIRNBAUM hired a real estate attorney, Kenneth Gindy ("Gindy"), to represent the BIRNBAUMS in connection with this transaction. 7 C.R. 19. Gindy wrote and sent a letter to BIRNBAUM that specifically (1) warned about past water penetration problems *into*

5

*the building overall* (not just the property), and about the aging mechanical systems associated with the building, (2) informed the BIRNBAUMS that the history of water penetration problems into the building had been the subject of litigation in the past, and (3) encouraged BIRNBAUM to investigate the same. 7 C.R. 117. Gindy even advised BIRNBAUM to terminate the Earnest Money Contract and renegotiate the price based on the anticipated cost to repair the issues revealed by the inspection report. 7 C.R. 117. Heeding Gindy's advice, the BIRNBAUMS requested to extend the closing date so that he and ATWELL could discuss the concerns raised by the inspection reports. 7 C.R. 117. ATWELL agreed to the extension. 7 C.R. 170.

Following their inspection and/or investigation, the BIRNBAUMS determined that the cost to waterproof the Property and replace the air conditioning units would cost $160,000.00. 7 C.R. 22. As a result, the BIRNBAUMS renegotiated the sales price with ATWELL down to $2,040,000.00, which is a $160,000.00 decrease from the previously agreed to price, and a $360,000.00 decrease from the original asking price for the Property. 7 C.R. 22.

The parties closed on the sale on August 31, 2007. 7 C.R. 121. From the date they first viewed the Property to the date of closing, the BIRNBAUMS never requested further information from ATWELL regarding her Seller's Disclosure

6

Statement or the evidence of past water leaks that was disclosed in the inspection report. 7 C.R. 18.

After closing, the BIRNBAUMS took possession of and started remodeling the Property, which took two years to complete. 7 C.R. 238, 241. As part of the "remodeling," the BIRNBAUMS retained Western Waterproofing to completely redo the patios, which involved demolishing, waterproofing, and replacing the existing tile and waterproof membranes. 7 C.R. 19. During the two-year long remodel, neither of the BIRNBAUMS observed any water penetration into the Property nor had any water penetration issues reported to them by the workers performing the remodel. 7 C.R. 18-19, 133.

The BIRNBAUMS moved into the Property on or about September 15, 2009, and thereafter experienced water penetration into the Property during or after a rainstorm; the BIRNBAUMS allege that, since that time, they have experienced numerous water penetration events in the Property. 7 C.R. 18.

On January 11, 2011, the BIRNBAUMS filed suit against ATWELL. Later, the BROWNING Defendants, Western Waterproofing, and the Condominium Owners Association for 200 Patterson were added. 1 C.R. 1.

The BROWNING Defendants moved for summary judgment on both traditional and no-evidence grounds. 2 C.R. 251. This motion was heard on July 23, 2013 following an earlier hearing on the summary judgment motion filed by

7

ATWELL; the trial court took both motions under advisement at that time. By letter ruling the trial court indicated on August 2, 2013 that it was granting both the BROWNING Defendants' and ATWELL's respective summary judgment motions. 2 R.R. 1-44; 9 C.R. 396-398.

On August 13, 2013, ATWELL and the BROWNING Defendants filed and set for hearing their Motion to Enter Judgment based upon the trial court's ruling. 9 C.R. 392-398. Judge Noll, the trial court judge, entered an interlocutory order on August 29, 2013, granting these motions for summary judgment. 9 C.R. 423. Considering that a trial on the merits involving the remaining defendants was set for September 11, 2013, ATWELL and the BROWNING Defendants filed a Motion to Sever. On that date, the trial court entered an Order of Severance, which severed all issues between the BIRNBAUMS, the BROWNING Defendants, and ATWELL into a separate cause number, 2013-CI-15152 (the "severed action"). 9 C.R. 433. At that point, the only issues remaining in the severed action were the amount of attorney's fees and costs that the BIRNBAUMS owed to the respective Defendants. The parties stipulated as to the reasonable and necessary attorneys' fees and costs incurred and to be incurred by the Defendants, and the trial court entered a stipulation to that effect and a final judgment in the severed action on March 18, 2014. 10 C.R. 5, 9.

On April 16, 2014, the BIRNBAUMS filed a Motion for New Trial purporting to seek a new trial from the trial court on the summary judgment, which was entered on March 18, 2014. C.R. 1-33. The BIRNBAUMS, however, set their Motion for

8

New Trial in the original cause of action rather than the severed action. This error was pointed out by the BROWNING Defendants and ATWELL in their Plea to the Jurisdiction. 10 C.R. 61. On May 19, 2014, Judge Noll heard and denied the BIRNBAUMS' Motion for New Trial. 10 C.R. 131.

## IV.

## SUMMARY OF THE ARGUMENT

The BIRNBAUMS, in their own summary of the argument as contained in their Brief, urge the following:

> "Occasionally we find a sale that breaks all the records and that is often the result of someone desperate to get settled and there is nothing available in the building. Unfortunately in real estate we cannot expect this to happen very often." 5 C.R. 181 (letter written by Weber to the 200 Patterson Condominium Association). The Birnbaum's purchase of Unit 1004 was just that—a purchase made out of desperation to purchase a low maintenance and luxury condominium while Mike was battling cancer and he wanted safety and security for his wife Beverly. And Weber got what she had hoped for—a sale that broke records made out of desperation to get settled, and she capitalized on that.

Appellants' Brief, at 14.

Given that the BIRNBAUMS had full knowledge, as discussed hereinabove and as further referenced hereinbelow, of water intrusion problems in the property and in the building itself *before they closed on the property*, this display of candor on their part is quite remarkable. Although ATWELL, the seller, freely pointed out in

9

her seller's disclosure notice that there had been a history of water intrusion in the unit; although the BIRNBAUMS themselves retained experts to inspect the property before the purchase, and obtained a report confirming these problems; although the BIRNBAUMS, cognizant of these problems, renegotiated the contract price specifically to account for needed repairs; and although they were aware *from their own attorney* that the entire building as a whole had not only experienced water intrusion problems but had been involved in litigation over same, still they completed the sale hoping against hope that they would beat the odds. Now they ask that someone, anyone, absolve them from the consequences of their own choices.

Having no evidence that the BROWNING Defendants were any more knowledgeable of water intrusion issues in either the property or in the building as a whole than were the BIRNBAUMS themselves at the time of purchase, it seems their real complaint against the BROWNING Defendants, at bottom, is that these realtors all should have made more of an effort to talk them out of the buying the property. No such duty is recognized in Texas law; the summary judgments were correctly granted; and the BIRNBAUMS' motion for new trial was correctly denied.

## V.

## ARGUMENT AND AUTHORITIES

10

ISSUE NO. 1 RESTATED: THE TRIAL COURT DID NOT ERR IN GRANTING THE BROWNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ISSUE NO. 2 RESTATED: THE TRIAL COURT DID NOT ERR IN DENYING THE BIRNBAUMS' MOTION FOR NEW TRIAL

*A. Standards of Review and Evidentiary Rulings*

A trial court's grant of summary judgment is reviewed by the appellate court *de novo*. ***Provident Life & Accident Ins. Co. v. Knott***, 128 S.W.3d 211, 215 (Tex. 2003). In a traditional motion for summary judgment, the defendant is entitled to summary judgment on the plaintiffs cause of action if the defendant can disprove at least one element of the plaintiffs cause of action as a matter of law. Rule 166a(c), Tex. R. Civ. P. *See also* ***Randall's Food Mkts., Inc. v. Johnson***, 891 S.W.2d 640, 644 (Tex. 1995); ***Wornick Co. v. Casas***, 856 S.W.2d 732, 733 (Tex. 1993); ***Black v. Victoria Lloyds Ins. Co.***, 797 S.W.2d 20, 27 (Tex. 1990); ***Powell Indus., Inc. v. Allen***, 985 S.W.2d 455, 456 (Tex. 1998).

To succeed on a no-evidence motion for summary judgment against a plaintiff's cause of action(s), the defendant need only allege that, after an adequate time for discovery, there is no evidence of an essential element of each of the plaintiff's

11

causes of action. Rule 166a(i), Tex. R. Civ. P.; *Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 882 (Tex. 2009). If the defendant meets its burden, the burden then shifts to the plaintiff to produce more than a scintilla of evidence to raise a genuine issue of material fact on the challenged element(s). *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). The evidence must be sufficient to allow reasonable and fair-minded people to differ in their conclusions on whether the challenged fact exists. Evidence that raises only a speculation or surmise is insufficient. *Forbes, Inc.*, 124 S.W.3d at 172. If less than a scintilla of evidence is produced, the defendant is entitled to a summary judgment on the plaintiffs cause (s) of action.

An appellate court reviews a trial court's ruling that sustains or overrules an objection to summary judgment evidence for abuse of discretion. *In re Estate of Denman*, 362 S.W.3d 134, 140-41 (Tex. App.—San Antonio 2011, pet. denied); *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 567 (Tex. App.—Fort Worth 2008, pet. denied); *Doncaster v. Hemaiz*, 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.) (citing *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). A trial court abuses its discretion if it acts

12

without reference to any guiding rules or principles, i.e., arbitrary and unreasonably. *Cire v. Cummings,* 134 S.W.3d 835, 838-839 (Tex. 2004); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-242 (Tex. 1985). Merely because a trial court may decide a discretionary matter differently than the appellate court does not demonstrate an abuse of discretion. *Id.* To obtain reversal for an erroneous exclusion or admission of evidence, the appellant must establish the error was harmful, that is, it was calculated to cause and probably did cause the rendition of an improper judgment. *Doncaster,* 161 S.W.3d at 601; Rule 44.1(a), Tex. R. App. P. Errors in admission or exclusion of evidence are generally not reversible unless the appellant can show the whole case turns on the complained of evidence. *Doncaster,* 161 S.W.3d at 601 (citing *Interstate Northborough Partnership v. State,* 66 S.W.3d 213, 220 (Tex. 2001); *Atlantic Mutual Insurance Co. v. Middleman,* 661 S.W.2d 182, 185 (Tex. App.—San Antonio 1983, writ ref'd, n.r.e.).

Astonishingly, the BIRNBAUMS argue that the BROWNING Defendants somehow "waived" their objections to the summary judgment evidence by reason of Judge Noll having *read* the evidence attached to the BROWNING Defendants' response, before he ruled on the admissibility thereof (as if he could somehow have ruled on it *without* reading it). Obviously the BIRNBAUMS cite no authority that

13

comes anywhere close to supporting such a specious argument. There is no dispute that the BROWNING Defendants timely filed their written and specific objections to the BIRNBAUMS' summary judgment evidence prior to the hearing on their summary judgment motion. 9 C.R. 221. Judge Noll heard and ruled on those objections in open court and on the record prior to argument on the summary judgment motion.

The BIRNBAUMS do cite the case of *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 383 (Tex. App.—Houston [1st Dist.] 2013, pet. denied), but that does not, in fact, deal with any such proposition. Rather, *Essex* stands for the unremarkable proposition that a party waives its objections if it does not file written objections to summary judgment evidence *until after the trial court has actually ruled on the motion for summary judgment*. It does not, as the BIRNBAUMS contend, stand for the proposition that by allowing the trial court to read the BROWNING Defendants' summary judgment motion and the BIRNBAUMS' proposed evidence, the BROWNING Defendants somehow waived their objections to that evidence. Adoption of such a standard would mean, absurdly, that a trial court would have to rule on the admissibility of summary judgment evidence without having any idea as to what the motion was about or what the evidence was that a party was proffering

14

in support of or opposition to the motion.

Although there is absolutely no question that (1) the BROWNING Defendants filed and presented their objections to the court before it considered their summary judgment motion, (2) the parties argued all of these objections, and (3) the court considered and ruled on each of these objections (1 R.R. 1-101, 2 R.R. 1-45), the BIRNBAUMS further contend that the objections are waived because the court did not reduce its rulings on those objections to a written order. To support this proposition, they cite first to *Utilities Pipeline Co. v. American Petrofina Marketing*, 760 S.W.2d 719, 723 (Tex. App.—Dallas 1988, no writ). It should be noted that the *Utilities Pipeline* case was decided under the old Rule 52(a) of the Texas Rules of Appellate Procedure. That rule required an "express ruling" as a prerequisite to appellate review. In 1997, the Texas Supreme Court adopted the new Texas Rules of Appellate Procedure. Rule 33.1(a)(2)(A) relaxed the requirement and codified case law that recognized implied rulings. *Frazier v. Yu*, 987 S.W.2d 607 (Tex. App.—Fort Worth 1999, pet. denied); *Salinas v. Rafati*, 948 S.W.2d 286, 288 (Tex. 1997) (finding that granting of motion to disregard "automatically" denied motion for judgment on verdict); *Accord v. General Motors Corp.*, 669 S.W.2d 111, 114 (Tex. 1984) (presuming objection to charge was overruled because trial court did not alter objectionable language); *Blum v. Julian*, 977 S.W.2d 819, 823 (Tex. App.— Fort

15

Worth 1998, no pet. hist.).

It is *not*, however, the BIRNBAUMS' contention that the trial court "implicitly" ruled on the BROWNING Defendants' objections, because the reporter's record accurately reflects that the trial judge not only heard and considered all of the objections, but that he also expressly ruled on each objection before considering the BROWNING Defendants' summary judgment motion. 1 R.R. 1-101. "Thus, error is preserved as long as the record indicates in some way that the trial court ruled on the objection either expressly or implicitly." *Frazier v. Yu*, 987 S.W.2d at 610 (citing John Hill Cayce, Jr., et al., *Civil Appeals in Texas: Practicing Under the New Rules of Appellate Procedure*, GUIDE TO THE NEW TEXAS RULES OF APPELLATE PROCEDURE 1997, at 10 (stating "[a] signed, separate order is not required, as long as the record otherwise shows that the ruling was made")).

Next, the BIRNBAUMS cite to *S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 855 (Tex. App.—Dallas 2011, no pet.). The facts of the *Choi* case are materially distinguishable, however. In *Choi*, although the appellee, Choi, submitted written objections to some of the summary judgment evidence, he did not seek or obtain a ruling from the court prior to the court's ruling on the summary judgment motion. After the court had already ruled on the summary judgment motion, Choi, in a subsequent hearing, sought to have the court rule on the objections. The court responded by telling Choi that because the court had granted his summary judgment,

16

he could "assume" that his objections were sustained. Essentially, the court was telling Choi that the court had made an implicit ruling on his objections by granting his summary judgment. *Choi* was not a case where the party had filed appropriate written objections to summary judgment evidence, asked for *and obtained* specific rulings from the trial judge on those objections, which were on the record and occurred before the trial court ruled on the summary judgment motion (all of which is reflected in detail in the reporter's record in this appeal).

An order pronounced in open court is considered "rendered" when it is officially announced, and it is valid from that time forward so that formal entry is only a ministerial act. *Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969); *UMC, Inc. v. Arthur Bros., Inc.*, 626 S.W.2d 819, 820 (Tex. App.—Corpus Christi 1981), writ ref'd, n.r.e., 647 S.W.2d 244 (Tex. 1982); *In re Bill Heard Chevrolet, Ltd.*, 209 S.W.3d 311 (Tex. App.—Houston [1st Dist.] 2006, orig proc.). As this Honorable Court has stated, "Therefore, to be effective, all orders and rulings must be made on the record either in writing *or in open court transcribed by the court reporter.*" *Bill Heard Chevrolet, Ltd.*, at 315 (citing Rule 33.1(a)(2), Tex. R. App. P. 33.1(a)(2)) (emphasis added). In this case, Judge Noll's rulings on the written objections were made on the record in open court, were transcribed by the court reporter, and are

17

found in Volume 1 of the Reporter's Record in this case.

The BROWNING Defendants objected to the BIRNBAUMS' attempt to use the unsworn and unverified reports of Jim Jones and Barbara Tarin in their attempt to defeat the summary judgment motion. 9 C.R. 260. The trial court specifically sustained this objection. 1 R.R. 79. Since the Jones and Tarin reports were neither verified nor accompanied by an affidavit, they were hearsay and therefore inadmissible summary judgment evidence. *See* Rule 166a(e), Tex. R. Civ. P. (court must grant a no-evidence motion for summary judgment "unless the respondent produces summary judgment *evidence* raising a genuine issue of material fact") (emphasis added). The absence of a jurat is substantive, and not a "purely formal" defect. *Moron v. Heredia,* 133 S.W.3d 668, 671 (Tex. App.–Corpus Christi 2003, no pet.) (citing *Tucker v. Atlantic Richfield Co.,* 787 S.W.2d 555, 557 (Tex. App.–Corpus Christi 1990, writ denied)); *see Hall v. Rutherford,* 911 S.W.2d 422, 425 (Tex. App.–San Antonio 1995, writ denied).

However, certain of the BROWNING Defendants' objections to the supplemental Tarin evidence were withdrawn and, as the BIRNBAUMS point out at pp. 19-20 of their Appellants' Brief, the Tarin report "was not excluded wholesale." Still, the BIRNBAUMS do not point to a single opinion or conclusion of Ms. Tarin

18

which they contend was improperly excluded *and which, if not excluded, would have avoided summary judgment.* Absent a specific statement on the part of the BIRNBAUMS as to how they feel the trial court's ruling on the BROWNING Defendants' evidentiary objections harmed them, it is difficult to see how they can prevail on this point—but, as further discussed hereinbelow, they could not have made a plausible argument for harm in any event.

As to Mr. Jones, the BIRNBAUMS contend, at p. 21 of their Appellants' Brief, that he "verified" his report by way of his deposition. Again, however, the BIRNBAUMS do not specifically reference any specific portion of Mr. Jones' deposition testimony. The trial court was not required to sift through the entire, voluminous 588 pages of the BIRNBAUMS' experts' depositions to search for evidence supporting their contentions. The law is clear in Texas summary judgment practice that a party cannot merely cite to an entire deposition to support or defeat summary judgment, but must make specific references to the deposition. Rule 166a(d), Tex. R. Civ. P.; *Weaver v. Bell*, 2005 WL 1364046 (Tex. App.—Austin. June 10, 2005, no pet.), at *15 (deposition was not proper summary judgment evidence without references to specific portions of the deposition); *White Oak Bend Municipal Utility District v. Robertson*, 2002 WL 245957 (Tex. App.—Houston

19

[14th Dist.], Feb. 21, 2002, pet. denied), at *5 n. 2 (refusing to consider entire transcripts from six witnesses' depositions and holding that neither the trial court nor the appellate court were required to sift through voluminous deposition transcripts in search of evidence to support appellant's contentions); *Guthrie v. Suiter*, 934 S.W.2d 820, 825-826 (Tex. App.—Houston [1st Dist.] 1996, no writ) (party opposing summary judgment could not attach entire deposition to its response, and trial court properly granted summary judgment where non-movant failed to specifically reference portions of the deposition relied upon) (citing *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989)).

Secondly, Mr. Jones in his deposition admits that his report was inaccurate and incorrect in indicating that there were water leaks in Unit #1004 on July 28, 2007, just a day before the BIRNBAUMS closed on the condominium unit. 8 C.R. 263-264.

Importantly, the BIRNBAUMS must show that the trial court abused its discretion in excluding this evidence and that the error was harmful, that is, it was calculated to cause and probably did cause the rendition of an improper judgment. *Doncaster*, 161 S.W.3d at 601; Rule 44.1(a), Tex. R. App. P. In other words, the BIRNBAUMS must show that the entire case turns on the excluded evidence. The BIRNBAUMS make no attempt to and cannot satisfy this requirement.

B. *The Trial Court Did Not Err in Granting the BROWNING Defendants' Combined No-Evidence and Traditional Summary Judgment Motion*

In this case, the BIRNBAUMS undertook a reasonable investigation of the unit as well as the building. As a result of those efforts, the BIRNBAUMS became aware of the history of leaks in the building *and even knew there had been a lawsuit concerning the leaks.* 7 C.R. 117 (letter from Mr. Birnbaum's attorney Kenneth Gindy). They also renegotiated the sales price downward materially in order to cover the costs of "waterproofing" the patios (roof) of the property. 7 C.R. 22, 170.

In the very recent case of *Jones v. Zearfoss*, 2015 WL 101592 (Tex. App.—San Antonio 2015 (no pet. hist.), which is very much on point, the sellers' home was damaged by burglars, which caused more than 50,000 gallons of water to flow through the house. The sellers' insurance company hired two separate companies to conduct water extraction and dry-out operations. In the seller's disclosure notice the seller stated: "[w]ater penetration: upstairs toilet leaked and caused water damage downstairs. Damage was covered by insurance and was professionally corrected." The Fourth Court of Appeals held that this disclosure of water damage was sufficient to induce the buyers (as it did the BIRNBAUMS in this case) to act on such information by, *inter alia*, conducting their own investigation; and that the claims that the seller understated the severity of the water damage failed to raise a genuine issue of material fact that would support a finding of material

21

misrepresentation. The appellate court upheld the lower court's "no evidence" summary judgment.

The BIRNBAUMS sued the BROWNING Defendants on theories of breach of contract, negligence, gross negligence, and breach of fiduciary duty. Proof of causation is of course essential for recovery under any of these theories, and reliance is in addition an essential element of the negligence claim insofar as this concerns negligent misrepresentation. *Federal Land Bank Association of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied); *Lim v. Baker*, 2007 WL 4180153 (Tex. App.—San Antonio 2007, no pet.), at *2. By agreeing to purchase a property "as is", a buyer agrees to make his own appraisal of the bargain and to accept the risk that he might be wrong. *Lim, supra.*

Accordingly, the sole cause of a buyer's injury in such circumstances, by his own admission, is the buyer himself. *Id.* He has agreed to take the full risk of determining the value of the purchase and removes the possibility that the seller's conduct will cause him damage. *Id.*; *see also Cherry v. McCall*, 138 S.W.3d 35, 39 (Tex. App.—San Antonio 2004, pet. denied) (buyers who purchased and accepted property "in its present condition" or "as is" assumed "entire risk as to the quality of

22

the property and the resulting loss").

The BIRNBAUMS questioned whether the contract for sale of the property actually constitutes an "as is" contract, since the words "as is" do not appear in the clause by which the buyers agree to accept the property "in its present condition." It has been repeatedly held by the courts in Texas that the language "in its present condition" is synonymous with the words "as is" in this context. *Cherry, supra. See also **LBM Investments, Inc. v. Caribe Properties, Inc.**, 2013 WL 5658555 (Tex. App.—Beaumont 2013, pet. denied), at *2 ("Contract language stating that the buyer accepts the property in its present condition constitutes an "as is" clause [citations omitted]...When a buyer agrees to purchase something as is, he agrees to make his own appraisal of the bargain and to accept the risk that he may be wrong."); **Volmich v. Neiman**, 2013 WL 978770 (Tex. App.—Fort Worth 2013, no pet.), at *3 ("Texas courts have interpreted contract language stating "in its present condition" to be an agreement to purchase the property 'as is'" [citations omitted]).

Indeed, **Volmich** is particularly instructive. In that case Mr. and Ms. Volmich entered into a contract to purchase a residential property from Mr. and Ms. Neiman. The earnest money contract, as in our own, contained an "as is" clause (that is, "in its present condition"). Mr. Volmich hired an inspector to conduct an inspection of the

23

home, and the resulting report indicated need for repair in certain areas, including moisture-related damage. Nonetheless, the parties closed on the property, and almost two years later the buyers filed suit against the sellers, claiming breach of contract, breach of implied warranty, negligence, and fraud. *Id.*, at *1.

The sellers filed a traditional summary judgment motion, as to all claims and causes of action, based on the confluence of the "as is" clause and the fact that the buyers had obtained their own inspection, which superceded any alleged wrongdoing on the sellers' part. The buyers, in turn, denied that the contract was an "as is" contract, and asserted that reliance on an independent inspection was not enough to constitute a new and independent basis for the purchase of the home. The trial court granted summary judgment in its entirety. *Id.*, at *1-*2.

The court of appeals affirmed. After first observing that the contract was indeed an "as is" contract, the court turned its consideration to the enforceability of an "as is" agreement, the factors including (1) the sophistication of the parties and whether they were represented by counsel, (2) whether the contract was an arms' length transaction, (3) the relative bargaining power of the parties and whether the contractual language was freely negotiated, and (4) whether that language was an important part of the parties' bargain. *Id.*, at *2.

24

The court's analysis is strikingly on point with our own case:

> In this case, both parties were represented by real estate agents. Additionally, although the Volmiches are German citizens, Mr. Volmich had worked as a project manager for wind farms in both Idaho and Texas before deciding to purchase a home in Wichita Falls. Neither party was represented by counsel, but the circumstances do not suggest any disparity of bargaining power that would affect the enforceability of the "as is" clause. Indeed, although the "as is" language is contained within the standard TREC contract form, the parties negotiated that specific part of the sales contract by adding that the Neimans would pay to have the property treated for termites if the inspection revealed the need for such a treatment. The parties had also previously negotiated to extend the initial ten-day termination period for an additional three days. The totality of the circumstances therefore leads us to conclude that the "as is" clause in this contract is enforceable as an arm's length transaction between parties with equal bargaining strength [citation omitted].

*Id.*, at *3. Here, as in *Volmich*, the BIRNBAUMS obtained their own inspection and were of course aware of a history of water damage both in the unit itself and in the overall building. Here, as in *Volmich*, the BIRNBAUMS negotiated this TREC contract form by obtaining a reduction in the purchase price specifically with reference to water intrusion damage and a perceived need for repair of that damage. *The only distinction between this case and Volmich is that in Volmich neither side was represented by counsel in the transaction; here, only one side was represented by counsel—the BIRNBAUMS.*

Actually there is one other distinction between our case and *Volmich*. In

25

*Volmich* the seller's disclosure statement indicated that the sellers were *not* aware of any roof defects or malfunctions, when in fact such defects and malfunctions existed. *Id.*, at \*4. Here, by contrast, ATWELL specifically referred in the seller's disclosure statement to the unit's history of water damage. Again the court's analysis in *Volmich* is instructive:

> Texas courts have held that when false and fraudulent representations are made concerning the subject matter of a contract but when the person to whom they are made conducts an independent investigation into the matters covered by the representations before closing, it is presumed that reliance is placed on the information acquired by such investigation and not on the representations made to him and that he therefore cannot seek relief because the bargain later proves unsatisfactory [citations omitted].

*Id.*, at \*5.

Of further particular significance is the case of *Lim v. Lomeli*, 2007 WL 2428078 (Tex. App.—San Antonio 2007, no pet.), which applies these principles specifically to a buyer suing a realtor. There the buyers conducted a pre-sale inspection and obtained an inspection report which contained multiple findings regarding potential water damage throughout the house. The buyers' realtor, Lomeli, allegedly told the buyers "not to worry" about areas of wood rot and possible water penetration that were found during the inspection, as these were "minor" issues; he did, however, advise the buyers that they should be concerned about a large

26

panoramic window, and suggested they should get estimates about the cost to repair the window. Accordingly, the buyers obtained an adjustment in the contract price to cover $10,000.00 for repairs. That contract, like this one, contained the standard clause that "the buyer accepts the property in its present condition." The buyers alleged that Lomeli told them that the clause was "nothing to worry about" and that it would not apply in the event they found something wrong with the house beyond the panoramic window. However, within two weeks of the closing, the San Antonio area experienced a heavy rainfall and the buyers alleged that nearly every window leaked "profuse amounts of brown water into the house", causing damage; they filed suit against Lomeli, the sellers, the sellers' agent, and others. Lomeli filed a motion for summary judgment on traditional and no-evidence grounds, which was granted in its entirety. *Lomeli*, at *1.

The Fourth Court of Appeals again affirmed, holding that the buyers, having hired their own inspector, reviewed his inspection reports, negotiated a price reduction for water penetration problems, and signed a contract stating "buyer accepts the property in its present condition", *as a matter of law could not establish the elements of causation or reliance to prove their claims. Id.*, at *4. As the court put it, "Information [about water penetration problems and damage] was equally available

27

to the [buyers]" and, "[b]ecause each of the causes of action alleged by the [buyers] require showing of reliance or causation, the trial court properly entered summary judgment against [the buyers] on each of their asserted claims." *Id.* Because summary judgment was properly granted in favor of the real estate agent, the court held summary judgment was also proper for the broker. *Id.*

Similarly, here, as set forth above, *before* they closed on the sale the BIRNBAUMS (a) agreed in the "as is" earnest money contract to accept the property "in its present condition," (b) had been made aware of preexisting water penetration in the home through the Seller's Disclosure Statement, (c) hired their own inspector prior to closing, who specifically indicated he had found evidence of water penetration into the home resulting in water damage, (d) completed and signed a "walk thru" and acceptance form stating they had the property inspected by their own inspector, whose report they had reviewed, and they accepted the property "in its present condition," (e) hired someone to address the water penetration and other issues, securing an estimate from Western Waterproofing to fix the water penetration problem, and negotiated a $160,000.00 decrease in the sales price, and (f) unlike the buyers in *Lomeli*, even hired a lawyer who specifically warned them about water penetration problems in the unit *and* in the building.

28

The BIRNBAUMS aver that the BROWNING Defendants somehow breached a duty to tell them they were entering into an "as is" contract, when it is of course axiomatic that "a broker does not have a duty to disclose the contents of a written agreement that the principal is obligated to read before he or she signs it." *Kim v. Harstan, Ltd.*, 286 S.W.3d 629, 634 (Tex. App.—El Paso 2009, pet. denied) (a case cited by the BIRNBAUMS themselves at p. 33 of their Appellants' Brief).

More disturbing, however, is the BIRNBAUMS' utterly specious argument at that same page of their brief that "[b]y first representing to the BIRNBAUMS they were experts in 200 Patterson, and then failing to tell the BIRNBAUMS of the pervasive water invasion issues, [the BROWNING Defendants] violated contractual, fiduciary and common law duties to the BIRNBAUMS." This argument is based on advice supposedly given by the BROWNING Defendants to the homeowners' association board regarding the "Bennett Unit", a unit down the hall from the property at issue, which had suffered water intrusion problems—*this being a completely separate unit in which the BIRNBAUMS acquired no interest whatsoever.* As to whether the BROWNING Defendants knew anything else about water intrusion problems in the building (beyond what the BIRNBAUMS themselves knew), the BIRNBAUMS offer nothing except naked conjecture and speculation, said to revolve

29

around the BROWNING Defendants' alleged representation of themselves as "experts" in this particular building. But "experts" in what? Title issues among the owners? Interior decoration issues? Market values of particular units other than the property at issue and the "Bennett Unit"? We don't know, because the BIRNBAUMS have provided no hint whatsoever of the alleged parameters of such "expertise" and point to no summary judgment evidence on the nature of such "expertise"; they simply asked the trial court, just as they ask this Honorable Court, to assume that the BROWNING Defendants must have known more than they did because they are experienced realtors. The appellate court rejected such farcical reasoning in *Lomeli*, and this Honorable Court should do so here.

In short, the BIRNBAUMS utterly failed to adduce any competent summary judgment evidence whatsoever on the elements of causation or of reliance on *any* of their asserted causes of action, and they fail to point to any such competent summary judgment evidence in their Appellants' Brief, opting instead to substitute "spin" for substance. The trial court correctly granted summary judgment on the BIRNBAUMS' claims, and that judgment need not and should not be disturbed.

C. *The Trial Court Did Not Abuse Its Discretion In Denying the BIRNBAUM'S Motion for New Trial*

In this regard, the BROWNING Defendants expressly adopt by reference the

30

discussion contained in Part VI of the Brief of Appellee ATWELL, in its entirety; the ATWELL Brief ably discusses and analyzes the reasons why (a) the trial court was without jurisdiction to hear the BIRNBAUMS' motion for new trial or to act thereon in any manner other than to dismiss the motion on jurisdictional grounds, and (b) even assuming *arguendo* that the trial court had jurisdiction to hear and act upon the motion, same was completely without merit and could not properly have been granted. ATWELL Brief, at 52-60. (The BROWNING Defendants likewise concur in the observation at Part VII of the ATWELL Brief, pointing out that the trial court's judgment awarding appellate attorney's fees should be conditioned upon a successful appeal.) The BROWNING Defendants would add only the following, in all respects subject to and without waiver of the jurisdictional argument set forth in the ATWELL Brief.

Evidence is not "new" unless it was not, *and through diligence could not reasonably have been*, discovered prior to trial (or in this case prior to the entry of summary judgment). *Alvarez v. Anesthesiology Associates*, 967 S.W.2d 871, 882-883 (Tex. App.—Corpus Christi 1998, no pet.). Nothing proffered by the BIRNBAUMS in their motion meets that standard.

For example, the BIRNBAUMS point out in the motion that on November 14,

31

2013—after the interlocutory summary judgment was granted, but several months before it was made final—Mr. Michael Stellato of Raba Kistner Consulting was deposed. In his deposition Mr. Stellato made reference to his earlier June 29, 2010 report prepared on behalf of Raba Kistner for the owners' association. Supp. C.R. 340-341. As ATWELL pointed out, the evaluation was performed years after the closing on the property and has no bearing on the condition of the property at the time it was sold to BIRNBAUM. This was further pointed out in the BROWNING Defendants' response to the motion. 10 C.R. 86. But in addition to this, the BROWNING Defendants attached to their response a true and correct copy of the transmittal letter of March 30, 2012 *in which BIRNBAUM's counsel was provided with a copy of the June 29, 2010 report to which they expressly refer in their new trial motion.* 10 C.R. 94-115. Not only *could* BIRNBAUM have obtained the Raba Kistner information, BIRNBAUM *did in fact* obtain the Raba Kistner information over a year before the summary judgment motions were heard.

Moreover—and at least as important—none of the information which BIRNBAUM and their counsel assert to be "new" *is in any way material within the summary judgment context.* No party has contended that the building never experienced water infiltration issues, and ATWELL freely disclosed this with respect

32

to the property in the seller's disclosure statement. The BIRNBAUMS freely acknowledge that they negotiated the price downward by $160,000.00—from $2.2 million to $2.04 million—specifically to accommodate repair costs necessitated by water damage. *The issue is not what the BROWNING Defendants knew, but rather what the BIRNBAUMS knew at the time of closing.* Not one iota of "new" evidence (or, for that matter, old evidence) proffered by the BIRNBAUMS suggests that the BROWNING Defendants or any of them had greater material knowledge at the time of closing than the BIRNBAUMS.

In view of the foregoing, the final judgment entered herein in favor of the BROWNING Defendants and ATWELL was and is in all respects correct and complete, subject only to the minor adjustment relating to appellate attorney's fees as referenced hereinabove. Subject thereto, the BROWNING Defendants respectfully submit that that judgment should be in all respects affirmed.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the BROWNING Defendants respectfully pray that the final judgment herein be in all respects affirmed, subject to the aforesaid adjustment as to appellate attorney's fees; and for all other and further relief, at law or in equity, to which the BROWNING Defendants might show

33

themselves justly entitled.

Respectfully submitted,

THORNTON, BIECHLIN, SEGRATO,
REYNOLDS & GUERRA, L.C.
100 N.E. Loop 410, Suite 500
San Antonio, TX 78216
210/342-5555; 210/525-0666 (fax)
vwaters@thorntonfirm.com


By: s/ Vaughan E. Waters
      Vaughan E. Waters
      State Bar No. 20916700
      vwaters@thorntonfirm.com

      ATTORNEYS FOR APPELLEES
      PHYLLIS BROWNING, PHYLLIS
      BROWNING COMPANY AND
      MIMI WEBER

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9, Tex. R. App. P., the undersigned certifies that:

1.    The Brief of Appellees contains 7,264 words.

2.    The Brief of Appellees has been prepared in proportionally spaced typeface using Word Perfect in Times New Roman 14 point.


s/ Vaughan E. Waters
Vaughan E. Waters

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Brief of Appellees has been forwarded to the following this 20th day of January, 2015.

*Via facsimile*

Ms. Lorien Whyte
Brin & Brin, P.C.
6223 IH 10 West
San Antonio, TX 78201

Mr. Daniel O. Kustoff
Ms. Melanie H. Phipps
Kustoff & Phipps, LLP
4103 Parkdale Street
San Antonio, TX  78229

Mr. Barry A. McClenahan
The McClenahan Firm
1901 N.W. Military Hwy., Suite 218
San Antonio, TX 78213

*Attorneys for Appellants*

Mr. S. Mark Murray
Ford Murray, PLLC
10001 Reunion Place, Suite 640
San Antonio, TX 78216

*Attorneys for Gena J. Atwell*

s/ Vaughan E. Waters
Vaughan E. Waters

35